[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14989

_____

D.C. Docket Nos. 1:10-cv-24652-FAM,
1:06-cr-20734-FAM-1

DEMOND L. OSLEY,

　　　　　　　　　Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

　　　　　　　　　Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 11, 2014)

Before MARCUS, DUBINA, and WALKER,* Circuit Judges.

MARCUS, Circuit Judge:

---

* Honorable John Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

Demond Levail Osley, a federal prisoner convicted of various offenses involving the sexual trafficking of a minor, appeals the district court's denial of his motion to vacate, set aside, or correct his sentence, filed pursuant to 28 U.S.C. § 2255. We granted a certificate of appealability concerning whether Osley's trial counsel was ineffective for failing to advise him during plea negotiations that a violation of 18 U.S.C. § 1591(b) carried a statutory mandatory minimum sentence as well as a potential life term of supervised release; and for failing to object that impermissible double counting occurred at sentencing. After thorough review we affirm.

## I.

## A.

The facts and procedural history are straightforward. On November 21, 2006, a federal grand jury in the Southern District of Florida returned an indictment charging Osley and his co-defendant, Stacey Greer, with multiple counts stemming from the commercial sex trafficking of a minor. Specifically, Osley was charged with: causing a minor to engage in a commercial sex act by means of force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a)(1) and (b)(1) (Count One); knowingly transporting an individual for prostitution, in violation of 18 U.S.C. § 2421 (Count Three); persuading, inducing, enticing, and coercing an individual to travel to engage in prostitution, in violation of 18 U.S.C.

2

§ 2422(a) (Count Four); and persuading, inducing, enticing, and coercing a minor to engage in prostitution, in violation of 18 U.S.C. § 2422(b) (Count Five).

Before trial, the parties discussed the possibility of Osley entering a guilty plea. In an e-mail dated January 17, 2007, the prosecutor informed Osley's lawyer, Philip Reizenstein, that he rejected the defendant's counteroffer to a plea that had been offered by the government. The prosecutor agreed with defense counsel's calculation that Osley's estimated guideline imprisonment range would be between 97 and 121 months "if his Criminal History is determined to be a III, as we are estimating." He also said he would seek a sentence at the high end of the range if Osley were convicted at trial. The prosecutor further explained that if Osley accepted the government's offer, the defendant would "receive a three-level reduction for acceptance of responsibility," lowering his guideline range to between 70 and 87 months, and the government would recommend a sentence at the low end of that range. He also predicted that with good behavior, Osley "would likely be incarcerated at most for 59.5 months, which is less than five years." The Assistant U.S. Attorney added that he was still willing to consider "a 5K or Rule 35 motion," which could further reduce Osley's sentence by a third. Two weeks later, the prosecutor again e-mailed defense counsel, reiterating that the government was "definitely interested in Mr. Osley's proffer / debriefing / assistance." Moreover, the prosecutor explained, "if all goes well [Osley] could

3

potentially receive as much as a third off his sentence" in addition to three points off for acceptance of responsibility.

On February 2, 2007, the district court held a hearing regarding Osley's plea status. The court expected Osley to plead guilty, but things didn't go as planned. Instead, counsel for Osley informed the court that his client, who was "wrestling very hard with a tough decision," had not yet accepted the government's plea agreement. Osley's counsel explained that he had sought changes to the plea deal and had "gotten the best that we could." The prosecutor informed the court that: (1) the maximum sentence in this case was life; (2) if Osley were to plead guilty, the prosecution planned to ask for 80 months; (3) there was no mandatory minimum sentence under the Sentencing Guidelines for the charged offenses; and (4) if Osley were found guilty of all charges, the Guidelines called for a range of between 90 and 121 months of imprisonment. The court said that it was time for Osley to make a decision, "to fish or cut bait."

Osley chose to roll the dice, reject the offer, and proceed to trial. The government's star witness was the seventeen-year-old victim, who provided damning testimony of the ordeal she suffered at the hands of the accused. Specifically, she described the "desperate" and "horrible" state she was in when she met Osley in Michigan on October 30, 2006, having run away from home without "anything besides the clothes on [her] back" after an "excruciating" fight

4

with her ex-fiancé. While she was at a payphone calling her mother for assistance, Osley approached the victim and asked if she needed to use his cellular telephone. Osley began "trying to get to know" the victim, and he told her he owned a house and fancy cars. He persuaded the victim to travel to Florida with him by promising that he would be her boyfriend and "buy [her] everything brand new." Because she had no identification, Osley encouraged the victim to obtain a false police report in order to board a plane with him that night. Induced by Osley's promises of "a new life, [a] time to start over," she acquiesced, and he subsequently purchased a ticket for her. But on the flight from Michigan, the victim's expectations came crashing down. Osley dropped a bombshell, informing her that she was expected to earn $500 per night for him by "selling [her] body."

Upon landing in South Florida, the victim met other prostitutes who worked for Osley. They taught her the "rules of the game," such as not being "allowed to look another male" in the face when "on the street," and being forced to call Osley "Daddy." The victim also testified that Osley referred to the women who worked for him, including the victim, as "[b]itch, ho." Osley put the victim to work the same night she arrived. On November 2, 2006, she was arrested for obstruction and trespassing in Broward County. Osley, who was "very angry" with her for getting arrested and for not bringing in enough money, picked her up from jail. They got into a heated argument, which was, as she described it, "very physical, very

verbal." She testified that Osley beat her and even placed his gun in her mouth. The next day, Osley turned the victim over to another pimp, co-defendant Greer. The victim worked for Greer until she was arrested for prostitution by the Miami Beach Police Department on November 9, 2006.

On February 7, 2007, the jury convicted Osley of all charges. As for Count One, the jury specifically found that Osley knew the victim "was less than 18 years of age" and that "force, fraud or coercion would be used." As for Count Five, the jury determined that Osley did not use a firearm.

Although during the plea discussions the parties had agreed and expressly said that no mandatory minimum applied, in fact a violation of Title 18 U.S.C. Section 1591(b)(1) carried a fifteen-year mandatory minimum sentence. Unbeknownst to the parties, Congress had changed the law adding the mandatory minimum on July 27, 2006, notably before Osley violated the statute. See 18 U.S.C. § 1591(b).[1] But it was not until Osley was interviewed by his probation

---

[1] The previous version of section 1591(b)(1) stated:

> (b) The punishment for an offense under subsection (a) is -- (1) if the offense was effected by force, fraud, or coercion . . . by a fine under this title or imprisonment for <u>any term of years</u> or for life, or both . . . .

18 U.S.C. § 1591(b)(1) (2000) (amended 2006) (emphasis added). The Adam Walsh Child Protection and Safety Act of 2006 amended this section to read this way:

> (b) The punishment for an offense under subsection (a) is -- (1) if the offense was effected by force, fraud, or coercion . . . by a fine under this title and imprisonment for <u>any term of years not less than 15</u> or for life . . . .

6

officer on March 28, 2007, after trial and in preparation for sentencing, that he and his counsel first became aware that a mandatory minimum sentence applied to his case. The Probation Department's Presentence Investigation Report ("PSI") confirmed that a fifteen-year mandatory minimum sentence applied to Osley's conviction under 18 U.S.C. § 1591(b)(1).

The PSI assigned Osley a base offense level of 30, determining that the cross reference to section 2A3.1 contained in section 2G1.3 under the 2006 Sentencing Guidelines applied because the offense involved conduct described in 18 U.S.C. §§ 2241 or 2242 (aggravated sexual abuse or sexual abuse). Moreover, a four-level enhancement was applied because the offense involved conduct described in 18 U.S.C. §§ 2241(a) or (b) (using force or threats). Finally, two more levels were added because the victim of the crime was a vulnerable victim pursuant to U.S.S.G. § 3A1.1(b)(1). With an adjusted offense level of 36 and a criminal history category of II, Osley's advisory guideline range was 210 to 262 months. An addendum to the PSI noted that the court could impose supervised release up to a term of life under 18 U.S.C. § 3583(k), but it set the guideline range for a term of supervised release between three years and life.

---

18 U.S.C. § 1591(b)(1) (2006) (emphasis added); see Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 208, 120 Stat 587, 615.

7

Osley objected to the PSI calculation, arguing that the cross reference to U.S.S.G. § 2A3.1 and the four-level enhancement constituted uncharged conduct in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000). Notably, Osley did not claim that these enhancements amounted to impermissible double counting. Osley also objected to the application of the two-level vulnerable victim enhancement and the fifteen-year mandatory minimum. Finally, Osley objected to the description of the offense conduct, asserting that he was innocent.

The district court conducted a sentencing hearing on May 16, 2007. Osley offered his rationale for going to trial:

> The reason I took it to trial is the government offered me a plea of 70 months. When I figured out my own [G]uidelines and figured out what my level was, the top end of my [G]uidelines was 71 months, so why would I take a plea to 70 months? What they giving me, a deal of a month? I might as well take it to trial.

The district court overruled Osley's objections to the PSI, agreeing with the probation officer that his guideline range was 210 to 262 months. The court noted that a life sentence was not appropriate since the jury had not found that a firearm had been used. But it concluded that Osley should be subject to an above-range sentence based on a number of aggravating factors: the victim's age, acts of coercion (including a beating the victim sustained), the devastation to the victim's future, and Osley's utter lack of remorse. The court explained that it was going to

8

"go up three levels," thereby increasing the total offense level from 36 to 39, and yielding a new range of 292 to 365 months.

The court ultimately sentenced Osley to 365 months of imprisonment on Count One, 120 months as to Count Three, 240 months on Count Four, and 365 months as to Count Five, all to run concurrently. The court also imposed a life term of supervised release and a $400 special assessment fee.

## B.

On April 10, 2008, Osley moved pro se for a new trial, which the district court summarily denied. Osley then appealed his convictions and sentence, as well as the denial of his motion. A panel of this Court vacated and remanded for the sole purpose of allowing the district court to clarify whether it had imposed a variance or a departure when calculating Osley's sentence; it affirmed as to all of the other claims. United States v. Osley, 302 F. App'x 896, 898 (11th Cir. 2008) (per curiam).

At a resentencing hearing conducted on May 5, 2009, the district court explained that the original sentence was an upward variance, not a departure. The court reimposed the same concurrent 365-month sentence, followed by supervised release for life and a $400 special assessment fee. The court observed that Osley's conduct evinced more coercion than was covered by the guideline range sentence, and the substantially enhanced sentence was designed "to reflect the seriousness of

9

the offense," "promote respect for the law," "provide just punishment," and "afford adequate deterrence."

On October 15, 2009, a panel of this Court affirmed, concluding that the total sentence of 365 months was not unreasonable. United States v. Osley, 349 F. App'x 418, 420 (11th Cir. 2009) (per curiam). The Supreme Court subsequently denied certiorari. Osley v. United States, 558 U.S. 1128 (2010).

### C.

Osley then filed a timely pro se motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255. He advanced five arguments, only three of which are relevant to this appeal. First, Osley claimed that trial counsel was ineffective for failing to inform him of the mandatory minimum fifteen-year sentence for a violation of 18 U.S.C. § 1591(b), asserting that the lawyer's failure was "the result of inadequate / non-existent research into the law and a misplaced reliance on the government's erroneous interpretation of the law." Second, Osley averred that counsel was ineffective at sentencing and on direct appeal because he failed to challenge an "obvious" double counting violation in the calculation of Osley's guideline range. Finally, Osley said his counsel improperly failed to advise him that there was a potential life term of supervised release for a § 1591(b) conviction.

Along with this motion, Osley filed an affidavit declaring, in relevant part, that: (1) Reizenstein never apprised him of the fifteen-year mandatory minimum sentence; (2) Osley did not become aware of the mandatory sentence until he was interviewed by his probation officer on March 28, 2007; and (3) if he had been correctly informed by Reizenstein of the mandatory sentence and his correct sentencing exposure, he would have pled guilty. Osley attached several relevant documents to this affidavit, including a letter defense counsel sent to Osley on May 17, 2007. Reizenstein acknowledged in the letter that neither the government, nor counsel, nor the court informed the defendant about the new fifteen-year mandatory minimum sentence. However, Reizenstein explained why he did not seek a new trial this way: "[Y]ou did not want an offer that appeared to expose you to a sentence of seven to ten years, so how logically, could I argue that you would immediately have accepted an offer that guaranteed you would serve a minimum of fifteen years?"

On July 25, 2011, a magistrate judge recommended that Osley's section 2255 motion be denied. As for the mandatory minimum sentence, the judge concluded that even though trial counsel admitted in writing that he failed to advise Osley of the mandatory minimum, Osley was not entitled to habeas relief because he could not demonstrate prejudice. The magistrate judge reasoned that since Osley rejected a plea deal of 70 to 87 months (5.8 to 7.25 years), there was no

reasonable probability that he would have accepted a plea to the statutory minimum of fifteen years (180 months) had it been offered. As for Osley's double counting claim, the magistrate judge found that although it appeared a viable double counting issue was present -- because U.S.S.G. § 2G1.3(c)(3) and § 2A3.1 punish the same conduct ("knowingly causing another person to engage in a sexual act by use of force [and] placing in fear") -- any error did not prejudice Osley because the court had imposed an upward variance anyway. Finally, the magistrate judge determined that counsel was not ineffective for failing to advise Osley that section 1591(b) carried a life term of supervised release for the same reasons the court rejected Osley's claim about the mandatory minimum. Over Osley's objections, the district court adopted the magistrate judge's Report and Recommendation in its entirety.

Osley timely appealed the order. Although the district court denied Osley's motion for a certificate of appealability ("COA"), we granted his COA request concerning whether counsel was ineffective for failing to argue that impermissible double counting occurred; and for not telling Osley that a violation of the statute carried both a potential life term of supervised release and a mandatory minimum fifteen-year sentence.

Osley filed his initial brief pro se; thereafter, however, we appointed counsel who filed supplemental briefing.

12

II.

In a section 2255 proceeding, we review legal conclusions de novo and factual findings for clear error. Devine v. United States, 520 F.3d 1286, 1287 (11th Cir. 2008) (per curiam). Ineffective assistance of counsel claims are mixed questions of law and fact that we review de novo. Id.

To prevail on an ineffectiveness claim, the defendant must satisfy the familiar two-part test established in Strickland v. Washington, 466 U.S. 668 (1984). First, he must show that counsel's performance was deficient. To meet this prong, the defendant must demonstrate that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Id. at 687. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance, and, therefore, counsel's performance is deficient only if it falls below the wide range of competence demanded of lawyers in criminal cases. Id. at 689. Then, the defendant must show that he suffered prejudice as a result of that performance. Id. at 687. This requires establishing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both Strickland prongs, and a court need not address both prongs if the defendant has made an

insufficient showing on one. See id. at 697; Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001).

The Supreme Court has long recognized that Strickland's two-part inquiry applies to ineffective assistance of counsel arising out of the plea process. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). Recently, in Missouri v. Frye, --- U.S. ---, 132 S. Ct. 1399 (2012), and Lafler v. Cooper, --- U.S. ---, 132 S. Ct. 1376 (2012), the Court clarified that the Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." In re Perez, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam). The Court concluded that, in order to establish prejudice, a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 132 S. Ct. at 1385; see Frye, 132 S. Ct. at 1409.

III.

A.

14

First, Osley says the district court erred in denying his ineffectiveness claim because counsel failed to advise him that he faced a mandatory minimum fifteen-year sentence if convicted under 18 U.S.C. § 1591(b)(1). We are not persuaded.

It is beyond dispute that the parties negotiated Osley's plea agreement under the erroneous assumption that a previous version of section 1591(b), which did not contain a mandatory minimum sentence, governed Osley's case. As defense counsel himself admitted, he failed to inform his client of the application of a 180-month mandatory minimum. Thus, in calculating Osley's probable sentencing range under the Sentencing Guidelines, the parties did not contemplate the effect of the mandatory minimum on the Guidelines recommendation. The prosecutor and defense counsel incorrectly informed Osley that his estimated guideline sentencing range was 97 to 121 months. Only after conviction, Osley learned that he not only faced a mandatory minimum fifteen-year penalty, but also that his guideline sentencing range was actually between 210 and 262 months. We need not decide, although we have serious doubts about, whether counsel's performance satisfied the standard of reasonableness required by the Sixth Amendment. Instead, we hold only that Osley cannot succeed on his claim of ineffective assistance of counsel because he has not come close to meeting his burden under Strickland's prejudice prong. See Strickland, 466 U.S. at 697.

15

To prove prejudice in the context of a foregone guilty plea, Osley must satisfy the three-part test the Court articulated in Lafler v. Cooper, 132 S. Ct. at 1385.[2] He can meet none of the requirements. As for whether he would have accepted the original offer, Osley claims he would have taken a plea that resulted in a fifteen-year mandatory minimum had he known he was facing up to 262 months under the Guidelines after a conviction at trial. To back this up, Osley points to his sworn statement that he would have pled guilty had he been apprised of the actual penalties he faced. As an initial matter, Osley's declaration that his plea deal would have resulted in a fifteen-year sentence is wholly speculative since it is unclear what plea terms the prosecution would have offered if it had known about the mandatory minimum. But, even assuming the prosecution would have offered Osley a plea agreement that recommended a mandatory period of incarceration of fifteen years, Osley has failed to establish a reasonable probability he would have accepted the deal since he had already refused to accept a deal that proposed a significantly lower sentence.

Notably, Osley turned down a plea agreement (albeit an unenforceable one) that would have exposed him to a sentencing range of only 70 to 87 months, along with a promise that the prosecutor would recommend to the court the low end of

---

[2] Lafler had not been decided when the magistrate judge issued his Report and Recommendation, although the court analyzed whether there was prejudice based on Strickland v. Washington, 466 U.S. 668 (1984), and Hill v. Lockhart, 474 U.S. 52 (1985).

that range. The prosecutor had also informed Osley (through his counsel) that, with good behavior, Osley could face as little as 59.5 months' imprisonment, and that the government was still willing to consider "a 5K or Rule 35 motion, which could potentiall[y] reduce his sentence by a third." Osley opted to take his chances and go to trial. Osley's unwillingness to accept a plea that offered the prospect of spending fewer than five years in prison utterly undercuts his claim that he would have accepted a deal that involved a fifteen-year mandatory minimum, yielding a term of imprisonment at least three times as large.

The government also informed Osley that if he took his case to trial, it would seek a sentence at the high end of his (incorrectly) estimated guideline range: about 121 months. Thus, by rejecting the guilty plea and proceeding to trial, Osley knowingly risked at least doubling his time in prison if convicted. The fifteen-year deal Osley claims he would have taken would have given him far less than the deal he rejected. Moreover, defense counsel informed Osley during plea discussions that he faced a maximum of life in prison if convicted. And, even knowing that he could spend the rest of his life behind bars, Osley still rolled the dice, as he was entitled to do, and submitted his case to a jury. Based on this calculus, we are hard-pressed to accept the claim that Osley would have taken a fifteen-year deal, even if he had known that he would be facing a guideline range of up to 262 months.

17

Osley's claim that he would have pled guilty had he been properly informed

is also undermined by his repeated claims of innocence. At his sentencing hearing,

Osley's counsel asserted that his client had "maintained his innocence from the

beginning of the case." Confirming this, Osley himself stated,

> I just really want to add on to what Mr. Reizenstein said that there's a lot of facts in this case that weren't proven. The government, they virtually proved their case on the word of a young lady who admitted that she lied on the stand. And I don't understand how this woman could [perjure] herself basically and I still get convicted. I'm sorry that we had to go through this whole little deal because if you ask me, if the young lady would have never lied about her age, we would have never been here from the start.

Osley insisted that he should not have to "bear all the weight" for his convictions

because the only thing he was guilty of was traveling with the victim to South

Florida, and "it didn't even get around to the point of me pimping her out." Osley

went on to explain that the victim "completely" lied when she testified that Osley

demanded she make $500 per day, and the reason the jury found him guilty was

because of the picture the "prosecution painted . . . to the jury of me." Even at his

resentencing hearing, Osley continued to urge that the victim fabricated certain

parts of her story,[3] and he provided the judge with a letter in which he attempted to

---

[3] Osley did admit at the resentencing hearing, "I know that's a -- it's a harsh and an immoral crime that I committed. I know that, and I understand that." But then he reverted to denying his guilt:

> There is some kernel of truth to the story, but that some -- like I said in the letter, some just did not happen. I don't understand why the young lady would fabricate

18

minimize his culpability. The district court judge described the letter this way: Osley "said he's learned a lesson, but there's a little back peddling in the letter, too, I call it. 'I didn't really beat up the girl,' the girl in quotes . . . . He's kind of innocent is what I get from this letter."

While Osley's denial of guilt surely is not dispositive on the question of whether he would have accepted the government's plea offer, it is nonetheless a relevant consideration. See, e.g., Humphress v. United States, 398 F.3d 855, 859 (6th Cir. 2005) (noting that the defendant's assertion of innocence during and after trial undermined his contention that he would have accepted a plea deal); Sanders v. United States, 341 F.3d 720, 723 (8th Cir. 2003) (same); Cullen v. United States, 194 F.3d 401, 407 (2d Cir. 1999) (same); United States v. Stevens, 149 F.3d 747, 748 (8th Cir. 1998) (same). Indeed, Osley's insistence on his innocence, both before and after trial, makes it more difficult to accept his claim that he would have taken a fifteen-year plea deal.

Quite simply, the district court did not err in finding that Osley has not carried his burden of establishing the first part of prejudice.

B.

---

the story as she did. I don't know, but it just didn't happen. And I'm telling that to be truthful.

Nor has Osley satisfied <u>Lafler</u>'s second prejudice prong. In addition to establishing a reasonable probability that "the plea offer would have been presented to the court," Osley shoulders the burden of proving that the "the court would have accepted [the plea agreement's] terms." <u>Lafler</u>, 132 S. Ct. at 1385. Unlike the expired plea offers in <u>Frye</u> and the rejected plea deal in <u>Lafler</u>, here the original plea agreement's terms, as laid out in the prosecutor's letter to defense counsel, were invalid. If Osley had pled guilty, the district court could not have sentenced him to the prosecutor's recommended 70-month sentence. <u>See</u> <u>United States v. Castaing-Sosa</u>, 530 F.3d 1358, 1360 (11th Cir. 2008) ("It is well-settled that a district court is not authorized to sentence a defendant below the statutory mandatory minimum unless the government filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 or the defendant falls within the safety-valve of 18 U.S.C. § 3553(f)."). Instead, Osley undoubtedly would have moved to withdraw his guilty plea upon discovering that the mandatory minimum applied, and, in any event, the court necessarily would have vacated the agreement.[4] <u>See</u> Fed. R. Crim. P. 11(b)(1) ("Before the court accepts a plea of

---

[4] Not surprisingly, Osley's co-defendant, Greer, filed a motion to withdraw his guilty plea upon being informed that a fifteen-year mandatory minimum sentence applied under section 1591(b)(1). The court granted this motion, explaining,

> I cannot sentence someone on a guilty plea who wasn't told of a minimum mandatory. . . . I'm fairly confident that if I did not vacate it, I would be reversed, because a minimum mandatory is a minimum mandatory. And you know what, it would be a good reversal.

20

guilty . . . the court must inform the defendant of, and determine that the defendant understands, . . . any mandatory minimum penalty."); United States v. Siegel, 102 F.3d 477, 481 (11th Cir. 1996) (holding that the district court's failure to advise a defendant, prior to the entry of his guilty plea, that the plea will result in the imposition of a mandatory minimum sentence violates Rule 11).

To the extent Osley avers that the prosecutor would have then offered a new deal amenable to him, and the district court would have accepted it, this claim is wholly speculative. See Frye, 132 S. Ct. at 1410 ("[A] defendant has no right to be offered a plea, nor a federal right that the judge accept it." (citations omitted)). As the Fourth Circuit recently noted, "[t]he lack of definition in the plea offer makes it substantially harder to determine it likely that a plea acceptable to [the defendant] would have been entered without the prosecution canceling it or the trial court refusing to accept it." Merzbacher v. Shearin, 706 F.3d 356, 370 (4th Cir. 2013) (internal quotation marks omitted) (emphasis added). We are not at all convinced that the trial judge would have accepted a plea agreement on this record.

### C.

Finally, Osley's claim also comes up short under the third prong of Lafler's prejudice test, which requires demonstrating a reasonable probability "that the

---

Greer proceeded to trial.

conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 132 S. Ct. at 1385. In Frye, handed down on the same day as Lafler, the Supreme Court explained that a defendant must show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Frye, 132 S. Ct. at 1409 (emphasis added).

The district court correctly noted in denying the section 2255 motion that "a plea below the statutory minimum was not legally available" to Osley. As we've observed, the record shows that if Osley had accepted the prosecutor's original plea deal recommending a 70-month sentence, the district court would have set aside the plea upon discovering that the mandatory minimum applied. Because the terms under the original deal were invalid, analyzing whether the "sentence . . . under the offer's terms would have been less severe" than the 365-month sentence imposed requires the rankest form of speculation on our part. Lafler, 132 S. Ct. at 1385. Osley has offered us nothing in the record even remotely suggesting that a new plea "would have resulted in . . . a lower sentence." In re Perez, 682 F.3d at 932. And, in fact, the district court's extensive justification for its steep sentence

strongly suggests otherwise.[5] In short, we are hard-pressed to find that Osley has met his burden on the third prong of Lafler either.

IV.

A.

Osley also claims defense counsel was ineffective for failing to advise him that section 1591(b) carried the possibility of a life term of supervised release. Again, we are unpersuaded.

Since Osley's counsel informed him that his potential maximum sentence if convicted was life in prison, counsel's failure to inform Osley of the life term of supervised release was not so deficient as to deprive him of his Sixth Amendment right to counsel. See Strickland, 466 U.S. at 687. Indeed, in United States v. Bejarano, 249 F.3d 1304, 1307 (11th Cir. 2001) (per curiam), we held that because the court informed the defendant that it could impose a maximum sentence of life imprisonment and that the defendant's sentence would include a period of supervised release, the defendant's substantial rights were not affected by the court's failure to inform the defendant at his plea colloquy of the specific term of

---

[5] Appellant's counsel insists that if Osley hadn't proceeded to trial, the district court would not have been exposed to the victim's or Osley's testimony. Because the court justified its upward variance on factors gleaned from this testimony, the argument goes, the court would have been inclined to sentence Osley to the mandatory minimum of fifteen years. We are unpersuaded. In the first place, the bell cannot be unrung at this point; in reviewing Osley's claim on appeal, we cannot erase the victim's searing testimony that plainly influenced the district court's sentence. Moreover, even if the defendant had not gone to trial, the district court likely would have learned of the egregious circumstances surrounding the crimes both at the time of accepting the plea and through a thorough PSI.

23

supervised release required by statute. Moreover, even if Osley could show that counsel rendered deficient performance by failing to advise him of the possible life term of supervised release, Osley's claim again fails Strickland's prejudice prong. See Lafler, 132 S. Ct. at 1384-85; Strickland, 466 U.S. at 694. Equipped with the knowledge that he potentially faced a sentence of life imprisonment, Osley still went to trial. On this record, Osley has failed to sustain a Strickland claim.

B.

Next, Osley urges us to find his counsel ineffective for failing to object at sentencing and on direct appeal that impermissible double counting had taken place since the four-level enhancement that was applied to his offense level under U.S.S.G. § 2A3.1(b) was based on the same conduct that determined his base offense level under § 2G1.3(c)(3)'s cross-reference provision. This claim fails as well.

Impermissible double counting occurs when a court applies one part of the Sentencing Guidelines to increase a defendant's punishment on account of the same kind of harm that was already fully accounted for by the court's application of another part of the Guidelines. United States v. Dudley, 463 F.3d 1221, 1226-27 (11th Cir. 2006). But double counting a factor during sentencing is allowed if the Sentencing Commission "intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." Id. at 1227

24

(quoting United States v. Stevenson, 68 F.3d 1292, 1294 (11th Cir. 1995)). "Absent a specific direction to the contrary, we presume that the Sentencing Commission intended to apply separate sections cumulatively, and, as a result, a defendant asserting a double counting claim has a tough task." United States v. Kapordelis, 569 F.3d 1291, 1315 (11th Cir. 2009) (quoting United States v. Lebovitz, 401 F.3d 1263, 1270 (11th Cir. 2005)) (internal quotation marks omitted).

Here, the probation officer applied the cross reference to section 2A3.1 found in section 2G1.3(c)(3) ("Criminal Sexual Abuse, Attempt to Commit Criminal Sexual Abuse") and determined that Osley had a base offense level of 30. Next, she proceeded to apply the specific offense characteristic enhancement in section 2A3.1(b)(1), presumably for the force and threats Osley employed. After reviewing the presentence investigation report and conducting the sentencing hearing, the district court decided to compute the guideline range in accordance with the probation officer's suggestions. In so doing, the court did not appear to punish Osley twice for precisely the same aspect of his conduct, but rather for his sexual abuse of the victim and then for the aggravated nature of that abuse.

The Sentencing Guidelines state that a "cross reference (an instruction to apply another offense guideline) refers to the entire offense guideline (i.e., the base offense level, specific offense characteristics, cross references, and special

25

instructions)." U.S.S.G. § 1B1.5(a). The four-level enhancement under U.S.S.G. § 2A3.1(b)(1) is a specific offense characteristic under § 2A3.1 and, therefore, the Sentencing Commission appears to have intended for both to apply. Consistent with this approach, several of our sister circuits have held that applying section 2G1.3(c)(3)'s cross-reference provision and the four-level enhancement does not constitute impermissible double counting because the Guidelines do not indicate otherwise. See, e.g., United States v. Archdale, 229 F.3d 861, 869 (9th Cir. 2000); United States v. Kizer, 517 F. App'x 415, 420 (6th Cir. 2013); United States v. Scott, 434 F. App'x 103, 106-07 (3d Cir. 2011).

When analyzing an ineffectiveness claim, we "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999). For starters, we are not convinced that the district court erred in applying the four-level sentencing enhancement together with the cross-reference provision. Thus, counsel's failure to lodge a double counting objection at sentencing cannot fall below Strickland's objective standard of reasonableness. See Smith, 170 F.3d at 1054 (asserting that while "[i]gnorance of well-defined legal principles is nearly inexcusable" for purposes of an ineffective assistance of counsel claim, "the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized").

26

But even if a viable double counting issue arguably existed, Osley cannot establish that he was prejudiced by counsel's failure to raise the claim. Contrary to his view, the record abundantly reveals that the district court would have imposed the same sentence even without the alleged double counting. See Kapordelis, 569 F.3d at 1315 (holding that any double counting error was harmless since the record indicated that the court would have imposed the same upward variance regardless of any Guidelines discrepancy due to the defendant's "long history of abuse, parity, and the need for incapacitation"). Specifically, at Osley's sentencing hearing, the district court judge explained that a sentence above the guideline range was appropriate because

> the convictions by themselves show that the aggravating factors of coercion, of the age, of the beating, of where this victim had to prostitute herself . . . would impact her tremendously . . . . I think in this particular case, having seen and heard the victim testify, the devastation to a young woman in the future, any relations that she may want to have with men in the future . . . is affected.

Moreover, the judge highlighted Osley's flagrant lack of remorse:

> This defendant has shown even today absolutely no remorse. It's almost a cavaier attitude, yeah, I did that, I didn't know she was under age. And what this case is all about is modern day slavery of underage, vulnerable people and it calls for aggravation . . . . Would this defendant do it again? Absolutely.

The judge, who witnessed the victim's fear as she testified at trial, also observed that he could count on his fingers the number of cases he had presided over that involved conduct more egregious than Osley's.

27

At the resentencing hearing, the district court judge again justified the upward variance this way:

> But the nature and circumstances of the offense, they're very serious; and they're not necessarily taken care of totally by the [G]uidelines because there was more coercion than indicated within the [G]uidelines. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, not just to this defendant but others is I think a sentence as I previously imposed is appropriate.

Based on this detailed record, it seems clear to us that the district court would have imposed the same sentence even if it had not applied the four-level enhancement. Again, Osley has not met his burden of showing that counsel's failure to object to any double counting error prejudiced him.

## C.

As a final matter, Osley insists that, at a minimum, we should "remand with instructions that the lower court hold an evidentiary hearing on his ineffective assistance of counsel claims." We disagree. Pursuant to section 2255, "if the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (internal quotation marks omitted). But a district court is not required to hold a hearing when the petitioner's claims are clearly contradicted by the record or are patently frivolous. Id. at 715.

Here, the factual bases of Osley's claims -- that is, the information counsel provided to Osley during his plea negotiation and counsel's failure to raise a double counting objection -- are not in dispute. Moreover, the record, which undeniably establishes that Osley refused to accept a plea deal that could have resulted in fewer than five years in prison, affirmatively contradicts Osley's allegation that he would have pled guilty to a fifteen-year deal if properly advised. The record unambiguously establishes that Osley is entitled to no relief; the district court was not required to conduct an evidentiary hearing.

**AFFIRMED.**