[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14717
Non-Argument Calendar
_____

D.C. Docket No. 0:14-cv-60783-WJZ

RICARDO BIGIO,

Petitioner - Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 26, 2017)

Before MARCUS, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Ricardo Bigio appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  On appeal, Bigio argues that the district court erred in concluding that he was not prejudiced by his counsel's failure to inform him that a proposed plea agreement—which Bigio rejected—included no fine and would render him potentially eligible for release after serving 85% of his sentence.  After careful review, we affirm the district court's judgment.

## I.    BACKGROUND

After law enforcement officials found 168 grams of heroin (among other contraband) in Bigio's car, the State of Florida charged him with trafficking in heroin in violation of Florida Statutes §§ 893.135(1)(c) and 893.03(1)(b)(11), possession of drug paraphernalia in violation of Florida Statutes § 893.147(1), driving with a suspended license, possession of more than one driver's license, and possession of Viagra without a valid prescription.  The possession of Viagra charge was eventually dropped.  A conviction under § 893.135(1)(c) for trafficking more than 28 grams but less than 30 kilograms of heroin carries a 25-year mandatory minimum sentence and a required fine of $500,000.  Fla. Stat. § 893.135(1)(c)(1)(c).

Bigio was represented by attorney Louis Casuso.  Before proceeding to trial on the four remaining charges, the government offered Bigio a plea agreement for a 15-year prison sentence.  Bigio rejected the offer.  During a colloquy, Bigio

informed the trial court that he had rejected the government's offer. The court asked Bigio if he knew that a conviction on the heroin trafficking charge could result in a 30-year sentence, with a 25-year mandatory minimum. Bigio said yes and reaffirmed that he wanted to reject the offer and proceed to trial. After ensuring that Bigio understood the penalties associated with the other charges, the court asked Bigio if he had an opportunity to discuss the plea agreement with his attorney. Bigio said yes, and again affirmed that he wanted to reject the offer and proceed to trial.

Bigio's first trial ended in a mistrial. Before his second trial, the trial court conducted another colloquy regarding the plea offer. Bigio again told the court that he understood he was facing a 25-year mandatory minimum sentence and a 30-year maximum sentence, he had discussed the agreement with his attorney, and he wanted to reject the offer and go to trial. The jury convicted Bigio on all counts at the second trial, and the court sentenced him to a 25-year mandatory minimum term of imprisonment on the heroin trafficking charge.

After an unsuccessful direct appeal, Bigio filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, asserting 15 separate grounds for relief. One such ground was that Casuso was constitutionally ineffective because he failed to accurately and fully inform Bigio about the government's plea offer. According to the motion, Casuso failed to inform Bigio

that the 15-year sentence he would have received under the plea agreement was not a "mandatory minimum" sentence, which meant that Bigio would have been eligible for release after serving 85% of his sentence and could receive 10 days of "good time" credit per month of time served. In Bigio's view, had he accepted the plea agreement, he would have been eligible for release after 12 years. The motion further alleged that Casuso failed to inform Bigio that the plea offer would have been for a second degree felony with no mandatory minimum sentence and that the fine he would have faced under the plea was $50,000 as opposed to $500,000. Bigio argued that had he known of these aspects of the plea agreement, he would have accepted it instead of risking a much longer sentence by proceeding to trial.

The State responded that there was no evidence that the offer made to Bigio included a reduction of the charge or the associated fine, explaining that "[t]he prosecutor simply made an offer of a prison term below the mandatory minimum sentence for this offense." The State argued that Bigio knowingly rejected the offer even having been informed of the 25-year mandatory minimum he faced by going to trial. The postconviction court denied relief for the reasons contained in the State's response without conducting an evidentiary hearing. On appeal, the postconviction court's denial was summarily affirmed.

Bigio subsequently filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Among other claims, Bigio again argued that

4

Casuso provided ineffective assistance of counsel by failing to inform him that under the plea agreement he could have been released after serving 85% of his sentence, would have faced a second rather than first degree felony, and would have been subject to a $50,000 fine as opposed to a $500,000 fine. The petition was referred to a magistrate judge who determined that an evidentiary hearing was necessary to assess that claim. The magistrate judge appointed counsel to represent Bigio.

At the evidentiary hearing, Bigio testified that Casuso informed him that he was facing a mandatory minimum sentence of 25 "calendar years" on the heroin trafficking charge. Bigio took Casuso's advice to mean that he would have to serve each day of his sentence if convicted. Casuso also informed Bigio that he was facing a $500,000 fine. According to Bigio, Casuso failed to tell him anything about the prosecution's plea offer except that it was for 15 years. Bigio took that to mean that he would have to serve each day of the 15 year sentence and would still face a $500,000 fine. Bigio further testified that Casuso did not give him any advice about accepting the offer because Casuso "was very strong about winning th[e] case," and that Casuso only gave him a short period of time—just before the trial began—to mull the offer over. Evidentiary Hr'g. Tr., Doc. 35 at 10-11.[1]

---

[1] Citations to "Doc. __" refer to numbered docket entries in the district court record in this case.

Bigio testified that he would have faced 12 and one half years of imprisonment had he accepted the 15-year agreement.  He explained that he would have accepted the plea agreement even if the fine remained at $500,000 had he known that he would have been eligible for early release.  Bigio further testified that he had relied on Casuso's advice to accept a plea agreement in a previous case.

John Countryman, the prosecutor on Bigio's case, testified for the State. Countryman explained that he made a 15-year plea offer to Bigio via Casuso.  As part of the agreement, Countryman agreed to waive the 25-year mandatory minimum sentence.  Countryman never discussed the fine with Casuso.  According to Countryman, Casuso told him that Bigio was not interested in the plea agreement.  On cross-examination, Countryman testified that he did not intend the 15-year sentence pursuant to the plea be a "mandatory minimum" sentence that would have precluded Bigio from being released before serving each day of his sentence.  Countryman further testified that he would have waived the fine as part of the plea agreement, but that he never discussed the fine with Casuso because Casuso told him Bigio was not interested in the plea offer.

Casuso also testified for the State.  He testified that he never discusses "gain time"—the mechanism through which Bigio could have secured early release under the plea agreement—with his clients, because it is discretionary and its availability is subject to political whims.  With regard to the fine, Casuso explained

that he was aware that in this type of drug case, the fine imposed on a defendant who accepts a plea agreement is always either waived or reduced to a nominal amount—but he did not share this information with Bigio.

Moreover, Casuso recalled that when Bigio rejected the plea, Bigio had joined a church and "felt that God was with him, he was protecting him." *Id.* at 33. During the second trial, Casuso asked Bigio if he wanted to reconsider the plea agreement, but Bigio was insistent on finishing the trial. Bigio never asked Casuso about gain time or the possibility of a reduced fine. Casuso also testified:

> I think, during the second trial it came down to 12. I told him maybe you ought to think about this. You know, 12 years seems like a long time, unless you get 25. . . . He felt like he had a shot at the trial, so he didn't take it.

*Id.* at 40.

The magistrate judge rejected Bigio's petition, determining that there was no reasonable probability that Bigio would have accepted the plea offer had he known about the lack of fine and possibility of early release. In doing so, the magistrate judge relied on Casuso's testimony that Bigio was convinced he could win at trial and that Bigio rejected the possibility of a 12-year plea agreement. The magistrate judge found Casuso to be credible and Bigio to be incredible to the extent his testimony diverged from Casuso's. Over Bigio's objections, the district court adopted the magistrate judge's report and recommendation. A member of this Court granted a certificate of appealability to consider whether the district court

7

erred in denying Bigio's claim that counsel was constitutionally ineffective for failing to accurately and fully inform Bigio about the plea offer.

## II.    STANDARD OF REVIEW

The district court's factual findings are reviewed for clear error, but the ultimate ineffective assistance of counsel inquiry is a mixed question of fact and law that we review *de novo*. *Nejad v. Att'y. Gen., Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016). We will reverse a factual finding for clear error only when we are left with a definite and firm conviction that a mistake has been committed. *United States v. Thomas*, 818 F.3d 1230, 1239 (11th Cir.), *cert. denied*, 137 S. Ct. 171 (2016). A district court's choice between two permissible views of the evidence cannot be clear error. *United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006).[2]

## III.    DISCUSSION

To succeed on an ineffective assistance of counsel claim, "the petitioner has to show both that his counsel's performance was deficient and that that deficient performance was prejudicial—that is, that there is a 'reasonable probability that,

---

[2] Although Bigio filed his petition for relief pursuant to 28 U.S.C. § 2254, we need not conduct this ineffective assistance of counsel inquiry through the deferential lens of § 2254(d). The magistrate judge determined that the state court's decision denying Bigio relief was contrary to clearly established federal law. That conclusion permitted the district court to determine, *de novo*, whether Bigio's constitutional rights were violated. The State does not appeal the determination that the state court's decision was contrary to clearly established federal law.

but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1284 (11th Cir. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). We need not address both prongs of the *Strickland* test if the petitioner has made an insufficient showing on one of them. *Dell v. United States*, 710 F.3d 1267, 1274 (11th Cir. 2013).

To show deficient performance, "the defendant must demonstrate that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). "There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance, and, therefore, counsel's performance is deficient only if it falls below the wide range of competence demanded of lawyers in criminal cases." *Id.*

Where the probable consequence of a plea agreement is particularly impactful or severe—for example, a high probability of deportation—a criminal defendant has a constitutional right to be informed of the consequence by counsel. *See Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) ("The severity of deportation— the equivalent of banishment or exile— . . . underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." (citation and internal quotation marks omitted)). Nonetheless, we have held that there is no

9

constitutional requirement that counsel inform a criminal defendant of each aspect of a potential sentence.  *See Osley*, 751 F.3d at 1226 ("[C]ounsel's failure to inform Osley of the life term of supervised release was not so deficient as to deprive him of his Sixth Amendment right to counsel.").

Here, Casuso's failure to advise Bigio of the possibility of gain time was well within the range of reasonable professional assistance.  Casuso testified that he never discusses gain time with his clients because it is discretionary and its availability is subject to political whims.  Casuso's desire to avoid potentially misleading his clients into believing they will be eligible for early release was reasonable.  Indeed, we have held that under certain circumstances, an attorney provides ineffective assistance of counsel when he erroneously advises his client that accepting a plea agreement will result in a more favorable outcome than the agreement can possibly guarantee.  *See, e.g.*, *Finch v. Vaughn*, 67 F.3d 909, 916 (11th Cir. 1995) (holding that counsel was constitutionally ineffective where he erroneously advised his client that accepting a plea agreement on state charges ensured that his sentence would run concurrent to any federal sentence he might receive for the same conduct).  Casuso's reasoned decision to decline to discuss

10

gain time with Bigio was therefore within the wide range of competence demanded of lawyers in criminal cases.[3]

Given Casuso's testimony that he was aware the prosecution would waive the fine if Bigio accepted the plea offer, however, Casuso's failure to inform Bigio that he would have faced no fine or a substantially reduced fine under the plea agreement arguably might have constituted deficient performance. But we need not decide that issue because Bigio suffered no prejudice from Casuso's alleged deficiency. In the context of a rejected plea agreement, to establish prejudice, the petitioner must show a reasonable probability that:

> (1) the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Osley*, 751 F.3d at 1222 (internal quotation marks omitted).

Bigio's claim with regard to the fine fails the first prong of this test. The record convincingly demonstrates that there was no reasonable probability that Bigio would have accepted the State's offer had he known that he would not have faced a fine. The record indicates that although Bigio was aware that he was

---

[3] To the extent Bigio argues that Casuso provided ineffective assistance by failing to inform him that the plea offer was for a lesser charge, Bigio's claim is meritless. The record contains no support for the proposition that Countryman intended to allow Bigio to plead guilty to a lesser charge. To the contrary, Countryman testified that his offer still required Bigio to plead guilty to first degree heroin trafficking.

11

facing a $500,000 fine if convicted, he never asked Casuso whether the 15-year plea offer included a fine.  Moreover, at the evidentiary hearing, Bigio asserted that he would have accepted a plea agreement had he been informed about his eligibility for gain time, even if the fine remained at $500,000.  By contrast, there is no corresponding evidence in the record suggesting that he would have accepted a plea agreement had he been told that his fine would be reduced but not been informed of his eligibility for gain time.  Further, Casuso testified that after he informed Bigio of the 15-year offer, Bigio was insistent on proceeding to trial because he felt that he would be acquitted and God was protecting him.[4]  The record contains no evidence suggesting that the possibility of a reduced fine would have changed Bigio's mind.  The district court therefore properly rejected Bigio's ineffective assistance claim as it pertains to the fine.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**

---

[4] Although the magistrate judge found, based on Casuso's testimony, that Bigio was unwilling to consider the possibility of a 12-year plea agreement, we do not rely on the existence of or discussions concerning any such agreement in assessing Bigio's petition.

12