[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-14161

Non-Argument Calendar

————————————————

ZURY BRITO-ARROYO,

                                        Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

                                        Respondent-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-01934-TWT

————————————————

Before LUCK, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Zury Brito-Arroyo appeals the denial of his 28 U.S.C. section 2255 motion to vacate his conviction and sentence without an evidentiary hearing. Brito claims that his counsel was ineffective for assuring Brito he could win a motion to suppress and thus advising Brito to reject a plea offer. The motion to suppress was denied, and Brito was sentenced to a term of imprisonment greater than that offered in the plea agreement he rejected. But for his counsel's advice, Brito alleges that he would have taken the plea deal. We granted Brito a certificate of appealability on the following issue:

> Whether the magistrate judge erred in concluding, without an evidentiary hearing, that Brito-Arroyo's trial counsel was not deficient for advising him to reject a favorable plea agreement in favor of seeking suppression of the evidence against him and that prejudice did not result?

After careful review, we affirm the district court's denial of Brito's section 2255 motion without an evidentiary hearing.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*Offenses and Indictment*

Special Agent Stephen Ledgerwood learned from a confidential informant that a blue Jeep registered in Buford, Georgia was involved in the sale of methamphetamine in Atlanta. Agent

Ledgerwood followed the Jeep to an apartment complex in Sandy Springs, Georgia. After contacting the Sandy Springs Police Department for assistance, Agent Ledgerwood decided to use a tracking device because initial surveillance of the Jeep was unsuccessful.

Agent Ledgerwood asked Task Force Officer and Coweta County Deputy Sheriff Eric Angel to obtain a tracker warrant for the Jeep, which was involved in money laundering and narcotics dealing. Both Agent Ledgerwood and Officer Angel thought that the Georgia state superior courts could issue warrants for use anywhere in the state. Agent Ledgerwood was also involved in a separate case in Coweta County, and Officer Angel assumed the tracker warrant for the Jeep was connected to that case.

Officer Angel agreed to apply for the warrant and told Agent Ledgerwood to give him draft language with the information supporting probable cause, which Agent Ledgerwood emailed to him. Officer Angel cut and pasted from the email into the tracker warrant application. The application stated that the Jeep was being used within Coweta County, which was an unchanged statement leftover from a previous warrant application Officer Angel had submitted and was using as a template. A judge in Coweta County signed the tracker warrant and authorized the use of the device to track the Jeep anywhere in Georgia.

Agent Ledgerwood received the warrant the same day, cursorily reviewed it, and coordinated with agents to install the tracker on the Jeep. The tracker was installed in Fulton County and agents monitored its movements, which led them to a house in Norcross,

Georgia (in Gwinnett County). After watching the Norcross house, officers pulled over Brito for a traffic violation while he was driving the Jeep. The traffic stop led to a search of the Jeep, a search of the Norcross house, a search of Brito's cellphone, and a search of the apartment where Brito lived in Fulton County. Those searches turned up cash, guns, a methamphetamine lab, and crystal and liquid methamphetamine.

After a five-count indictment was returned against Brito, his attorney, John Lovell, moved to suppress the evidence derived from the tracking device. Brito argued the judge who issued the tracker warrant lacked jurisdiction to do so outside of Coweta County, and there was no evidence the Jeep had ever been in Coweta County. Brito argued that the execution of a void warrant violated the Fourth Amendment and required suppression of the evidence obtained from it.

The district court, adopting the magistrate judge's recommendation, denied Brito's motion because even though the warrant was void under state law, state law violations do not implicate the Fourth Amendment, and the warrant otherwise met the Fourth Amendment's requirements of probable cause and particularity.

*Plea and Sentence*

After the district court denied his motion to suppress, Brito pleaded guilty to four counts: conspiracy to possess with intent to distribute methamphetamine; possession with intent to manufacture and distribute methamphetamine within 1,000 feet of an

elementary school; maintaining a residence to manufacture and to possess with intent to distribute methamphetamine; and manufacturing and possessing with intent to distribute methamphetamine on premises where a minor child resides. He testified that he was satisfied with the representation of his lawyer, but reserved his right to appeal the denial of the suppression motion.

At Brito's sentencing hearing, Lovell told the district court about the first, rejected plea offer. He said the government approached him with a plea offer with a 10–15-year sentence, but Lovell thought he had a "bona fide suppression issue." He explained that, "[i]f nothing else, among other legal theories I pursued, one was that the warrant was void *ab initio*, because in the State of Georgia such warrants had been found to be void where a judge issued a warrant outside of his jurisdiction." The district court sentenced Brito to 252 months (21 years).

## Direct Appeal

Brito appealed the denial of his suppression motion, and we affirmed. First, we reasoned that Brito had not established a Fourth Amendment violation because a violation of state law, by itself, does not implicate the Fourth Amendment. Second, we explained that even if there had been a Fourth Amendment violation, the good faith exception to the exclusionary rule would apply because the miscommunication between Agent Ledgerwood and Officer Angel showed negligence, not recklessness.

*The Motion to Vacate*

On May 11, 2022, Brito filed a pro se motion to vacate his conviction and sentence under section 2255, alleging ineffective assistance of counsel.  Brito claimed that Lovell "erroneous[ly] advi[s]ed" him to reject the first plea offer because Lovell assured Brito he could get the evidence from the tracker warrant suppressed.  Brito explained that Lovell told him the government had offered him a plea with a 15-year sentence at the pretrial stage, and that Lovell knew that Brito wanted to accept a favorable plea.  However, Lovell told him to reject the plea because he would get no prison time if Lovell won the suppression motion.  Brito contended that Lovell's deficient performance prejudiced him because he received a 21-year sentence as opposed to 10–15 years.  Brito requested that the court appoint him counsel for an evidentiary hearing and grant his motion to vacate his conviction and sentence.

Adopting the magistrate judge's recommendation, the district court denied Brito's section 2255 motion without holding an evidentiary hearing.  It concluded that Brito had not shown that no competent lawyer would have pursued the suppression issue or that the motion was "doomed to fail," so it may have been reasonable for Lovell to conclude he could win the motion.  It noted that law enforcement agents acted negligently and that it was an open question whether the good faith exception applied to warrants that were void *ab initio*.  The district court also concluded that sentencing recommendations in a plea agreement are not binding on a court.  Therefore, Brito could not show prejudice, as there was no

indication that the district court would not have sentenced him to 21 years even if Brito had accepted the first plea offer.  The district court declined to issue a certificate of appealability.

Brito timely filed his notice of appeal on December 5, 2022. We construed it as a motion for a COA and granted one on the following issue:  "Whether the magistrate judge erred in concluding, without an evidentiary hearing, that Brito-Arroyo's trial counsel was not deficient for advising him to reject a favorable plea agreement in favor of seeking suppression of the evidence against him and that prejudice did not result?"

## STANDARD OF REVIEW

The denial of an evidentiary hearing is reviewed for an abuse of discretion in a section 2255 proceeding.  *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002).  An evidentiary hearing must be held on a motion to vacate "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  We construe a habeas petition filed by a pro se litigant "more liberally than one filed by an attorney."  *Aron*, 291 F.3d at 715.

## DISCUSSION

The district court did not abuse its discretion in concluding that Brito's motion should be denied without an evidentiary hearing, as the record conclusively shows that Brito is entitled to no relief.

When ineffective assistance of counsel is alleged in the plea process, *Strickland*'s[1] two-part test applies. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). "In the context of an ineffective-assistance-of-counsel claim, a petitioner is entitled to an evidentiary hearing if he alleges facts that show both (1) that his lawyer's performance was deficient and (2) that the deficient performance prejudiced his defense." *Griffith v. United States,* 871 F.3d 1321, 1329 (11th Cir. 2017) (*citing Strickland v. Washington*, 466 U.S. 668, 688 (1984)). But "a district court need not hold a hearing if the allegations are "patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citation omitted).

The defendant bears the burden of proving that counsel performed deficiently by advancing a strategy that fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. The standard is not perfection, but rather what a reasonably competent attorney would do. *Brewster v. Hetzel*, 913 F.3d 1042, 1056 (11th Cir. 2019). Scrutiny of attorney performance must be "highly deferential." *Strickland*, 466 U.S. at 689. The defendant also must prove that there is a reasonable probability that counsel's deficient performance prejudiced the defense. *Id.* at 687. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Because both parts of the [*Strickland*] test must be satisfied in order to show a violation of the Sixth Amendment,

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

[we] need not address the performance prong if the defendant cannot meet the prejudice prong." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

Here, Brito has not carried his burden of establishing that Lovell's performance prejudiced him. To prove that he was prejudiced in the pretrial process, Brito must show that "he would have accepted the offer to plead pursuant to the terms earlier proposed" if not for his counsel's bad advice. *Missouri v. Frye*, 566 U.S. 134, 148 (2012). Specifically, Brito must allege facts showing that "there is a reasonable probability that [(1)] the plea offer would have been presented to the court," (2) "the court would have accepted its terms," and (3) the sentence, under the offer's terms, "would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Brito's allegations, even if taken as true, are "affirmatively contradicted" or "based upon unsupported generalizations" in light of the record. *Winthrop-Redin*, 767 F.3d at 1216. We do not "review [his] appeal in a vacuum; his assertions on appeal are informed by everything that came before it." *Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015). Where a defendant gives statements under oath at a plea colloquy and signs a plea agreement, he bears a "heavy burden" to overcome that evidence with subsequent, contradictory section 2255 claims. *Winthrop-Redin,* 767 F.3d at 1217.

Brito's allegation that the first plea would have resulted in a less harsh sentence is contradicted by the record, so Brito failed to

carry his burden to prove the third prong of *Lafler*.  Brito argued that his sentence under the first plea offer would have been less severe than the one ultimately imposed, stating, "the 15[-]year plea would have resulted in a substantially less harsh sentence than the 252 months imposed by the [c]ourt as a result of counsel's deficient performance."  However, we have found that "the district court's extensive justification for its steep sentence strongly suggests" that it would not have accepted a new plea offering a lower sentence. *Osley v. United States*, 751 F.3d 1214, 1226 (11th Cir. 2014).  In *Osley*, when addressing the third prong of *Lafler*, we noted that the district court's lengthy reasoning for its sentence was an indication that it would not have lessened the defendant's sentence pursuant to a plea agreement.

Here, the district court offered extensive, specific justifications for the sentence it imposed.  The record shows that the district court sentenced Brito to 21 years based on the 18 U.S.C. section 3553(a) factors and the circumstances of his specific crime. Those circumstances are the same regardless of whether Brito had accepted the first plea offer.  The district court said, "I think the sentence is a fair and reasonable one and hope will communicate the message to others who might be tempted to do so that if you come to this country illegally and as a way of making money, manufacture, sell and distribute drugs on a large scale, that the punishment will be severe."  Brito's illegal entry in the country and his large-scale distribution of drugs were both factors that the district court could have weighed at the time of the first plea offer, just as it did when Brito eventually pleaded guilty.  Brito has not made

allegations sufficient to show that his acceptance of the first plea offer would have changed the district court's consideration or the outcome of his sentence. And the record shows that Brito knew that the court had discretion in sentencing him. His signed guilty plea stated that no one could predict what sentence the court would impose.

Further, Brito acknowledged at his plea colloquy that he was satisfied with Lovell's performance, that he had reviewed the plea with Lovell, and that no one could predict what sentence he would receive. Notably, Brito signed this agreement *after* the district court denied his motion to suppress. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

## CONCLUSION

Because Brito has not carried his burden to show that the "records of the case [do not] conclusively show" that he is entitled to no relief, 28 U.S.C. § 2255(b), we affirm the district court's denial of his motion without an evidentiary hearing.

**AFFIRMED.**