[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11894
Non-Argument Calendar
_____

D.C. Docket Nos. 2:10-cv-08029-RDP-JHE; 2:07-cr-00384-RDP-JHE-1


DARRYL LOVOY COOK,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 3, 2015)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Darryl Lovoy Cook, a federal prisoner, appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate, correct, or set aside his sentence following an evidentiary hearing on his claim that trial counsel rendered ineffective assistance by failing to advise him adequately of the government's position on a potential plea deal.  The district court denied § 2255 relief, concluding that Cook had not shown that he was prejudiced by any deficient performance because he was unwilling to accept the government's conditions for any potential plea agreement.  Alternatively, the court determined that counsel's performance was a reasonable tactical response to a challenging attorney-client relationship.

The district court granted a certificate of appealability on the following question:  "whether Mr. Cook was deprived of his Sixth Amendment right to effective assistance of counsel due to his counsel's alleged failure to adequately advise him of the Government's position on a plea in his case."  After careful review, we answer this question in the negative, and therefore affirm the district court's denial of Cook's § 2255 motion.

**I.**

Cook was the Birmingham, Alabama, area coordinator for a multi-state counterfeit-check conspiracy.[1]  The conspiracy defrauded businesses and banks of over $1 million by creating counterfeit checks that appeared to draw from a

---

[1]  These facts are taken from the presentence investigation report based on evidence presented at Cook's jury trial.

legitimate account at a genuine bank and that were made payable to members of the conspiracy.  Cook recruited others to the conspiracy and served as a liaison between the conspirators who counterfeited and forged checks and those who cashed them.

For his part in the conspiracy, Cook initially was indicted on two counts of possessing counterfeit checks and one count of conspiracy to commit bank fraud. In November 2007, the government filed an eighteen-count superseding indictment against Cook and ten co-defendants.  In the superseding indictment, Cook was charged with six counts of bank fraud and nine counts of aggravated identity theft, in addition to the original three counts.  Cook's co-defendants all pled guilty. Cook, however, proceeded to trial.

At trial, the government's evidence consisted primarily of testimony from cooperating co-defendants and two confessions Cook made while in police custody.  Before trial, Cook unsuccessfully had moved to suppress the confessions, alleging that they were substantially forged.  The jury found Cook guilty of all eighteen counts.  The district court sentenced Cook to a total term of 156 months of imprisonment, and we affirmed Cook's convictions and sentences on direct appeal.  *United States v. Cook*, 336 F. App'x 875 (11th Cir. 2009).

3

## II.

Cook timely filed a 28 U.S.C. § 2255 motion alleging, among other things, that his trial counsel, Hube Dodd, rendered ineffective assistance by failing to advise him about the status of plea negotiations.   The district court held an evidentiary hearing at which Cook was represented by counsel.[2]

At the evidentiary hearing, Cook testified that he consistently told Dodd that he was willing to accept responsibility and to plead guilty to the charges against him, even after the superseding indictment was filed.   But Dodd, according to Cook, never communicated a plea offer from the government, did not inform Cook of the government's position regarding the terms of a potential plea deal, and told Cook that he had to go to trial despite a very low chance of success.   Cook stated that Dodd became "irritable" and frustrated with him whenever he brought up the possibility of a plea deal, even though Cook believed that one was possible because his co-defendants had received plea deals.   On cross-examination, Cook maintained that he was innocent of most of the conduct charged in the superseding indictment—admitting only that he was a driver for two instances of check fraud— and that the confessions attributed to him were substantially forged.

---

[2]   Initially, the district court denied Cook's § 2255 motion after holding an evidentiary hearing at which Cook was denied appointed counsel.  Recognizing that this was error, *see* Rule 8(c), Rules Governing Section 2255 Proceedings ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."), the district court appointed counsel and held another evidentiary hearing.  This appeal concerns the second evidentiary hearing.

Dodd testified that plea negotiations with the government did not advance because Cook was unwilling to accept responsibility for the "vast majority," or the "lion's share," of the conduct alleged in the superseding indictment, as the government insisted. In other words, Cook would have had to admit to conduct establishing him as the "ringleader" of the conspiracy in Birmingham, which, Dodd explained, Cook was unwilling to do. Dodd said that there was no chance of a plea deal before the superseding indictment because it was clear that the government intended to seek additional charges and because the government had rejected Cook's initial offer to plead guilty to the original indictment. Once Cook moved to suppress the confessions, the government additionally required as part of any plea deal that Cook recant his allegations that his signed confessions were forged and that the government agents were liars.

Dodd further testified that he communicated the government's terms to Cook "numerous times," but Cook's response was that he was not guilty of the vast majority of the conduct and that he wished to file a motion to suppress and to proceed to trial. Dodd stated that he told Cook that he would have difficulty winning at trial based on the government's evidence against him. At some point, Cook expressed frustration that Dodd did not believe Cook was innocent. From that point forward, Dodd explained, although he continued to pursue a potential plea deal with the government, in order "to continue a positive relationship," he

5

"was not very direct in suggesting to [Cook] repeatedly that he had to plead guilty or that he should plead guilty." He elaborated on cross-examination that he began to "tread[] very lightly" with Cook in November or December 2012, telling Cook the steps that would be required to plead guilty rather than directly advising him to plead guilty. For example, he told Cook that he would have to admit to certain facts by pleading guilty, but Cook "never wavered in his insistence that he did not do the vast majority of the conduct that was described and attributed to him." Nonetheless, Dodd stated that he kept in contact with the government about a possible deal until two to four weeks before trial, but the government's essential terms did not change. Dodd testified that no formal plea offer was ever made.

After hearing the evidence, the district court denied Cook's § 2255 motion in open court. The court first concluded that Cook had not shown that he was prejudiced by any alleged deficiency in Dodd's performance. From the very beginning, the court found, the government was not willing to enter into any plea agreement unless Cook admitted responsibility for a substantial amount of criminal activity and, once Cook filed a suppression motion, recanted his allegations of forgery. The court determined that Cook was never willing to accept substantial responsibility for the conduct alleged in the superseding indictment, and, even in his sworn testimony at the § 2255 evidentiary hearing, he still did not wish to take such responsibility. As a result, the court concluded that no prejudice occurred

6

because Cook was not willing to do what the government insisted upon, and the government was not willing to do what Cook wished to do.

In the alternative, the district court found that Dodd's performance was not deficient. The court characterized Dodd's conduct as a reasonable tactical choice in response to a challenging attorney-client relationship. The court found that Dodd was well aware that Cook wanted to plead to some small amount of conduct, but not all the conduct the government was going to insist upon. This disparity, according to the court, created frustration in the attorney-client relationship and hamstrung Dodd's ability to negotiate a plea. The court further determined that Dodd communicated to Cook the government's two essential conditions for any plea deal, which did not change at any time. Due to the strain in the relationship, the court stated, Dodd "did not keep his thumb down every time they discussed the case on the 'offer' that had previously been made," but he "carefully and respectfully" tried to "honor[] his client's position." The court discredited Cook's testimony that Dodd had insisted that he go to trial. Accordingly, the court denied the § 2255 motion, entered judgment, and granted a certificate of appealability.

## III.

On appeal from the district court's denial of a § 2255 motion, we review legal conclusions *de novo* and factual findings for clear error. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). We review *de novo* a claim of

7

ineffective assistance of counsel, which is a mixed question of law and fact. *Id.* A district court's credibility determinations are entitled to "substantial deference." *Jeffries v. United States*, 748 F.3d 1310, 1313 (11th Cir.), *cert. denied*, 135 S. Ct. 241 (2014).

## IV.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2025, 2063 (1984). The benchmark for judging a claim of ineffective assistance of counsel is whether counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S. Ct. at 2064. To make such a showing, a prisoner must prove two things: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Id.* at 687, 104 S. Ct. at 2064. "A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one." *Osley*, 751 F.3d at 1222.

The Sixth Amendment right to counsel, and with it the *Strickland* analysis, "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. ___, ___, 132 S. Ct. 1376, 1384 (2012); *see Missouri v. Frye*, 566 U.S. ___, ___, 132 S. Ct. 1399, 1405 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373, 130 S. Ct. 1473, 1486

(2010); *Osley*, 751 F.3d at 1222.  The right to effective counsel "extends specifically to 'the negotiation and consideration of plea offers that lapse or are rejected.'"  *Osley*, 751 F.3d at 1222 (quoting *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012)).

The Supreme Court has not elaborated in detail on the "duty and responsibilities of defense counsel in the plea bargain process."  *Frye*, 132 S. Ct. at 1408; *see Lafler*, 132 S. Ct. at 1384 (finding it unnecessary to explore performance because all parties agreed that defense counsel was deficient).  In *Frye*, counsel allowed a time-limited plea offer to expire without advising the defendant or allowing him to consider it.  *Frye*, 132 S. Ct. at 1408.  The Court found that this was deficient performance, holding that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  *Id.*  Consistent with *Frye*, we have stated, in the context of plea negotiations, that "[c]ounsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution."  *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991).

The inquiry into prejudice, however, is more defined in the plea-bargaining context:  "[A] defendant must show the outcome of the plea process would have

been different with competent advice." *Lafler*, 132 S. Ct. at 1384. In order to establish prejudice in the context of a rejected or failed plea bargain,

> a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."

*Osley*, 751 F.3d at 1222 (quoting *Lafler*, 132 S. Ct. at 1385).

### A.

Cook contends that Dodd's performance was deficient because he "did not continuously communicate the Government's position on a potential plea bargain to Mr. Cook." He asserts that Dodd admitted to "treading lightly" at some point and ceasing to directly communicate with Cook about a potential plea bargain and that this was contrary to the reasoning of Supreme Court's decision in *Frye* and *Lafler* and to the Alabama Rules of Professional Conduct. *See Frye*, 132 S. Ct. at 1408 (noting that codified standards of professional practice "can be important guides" in assessing counsel's performance). Cook urges this Court to interpret *Frye* to apply not only to formal offers, but also to the process that produces them.

It is unnecessary to determine the scope of defense counsel's responsibilities in this context—concerning preliminary plea negotiations and, at best, a nascent,

10

oral plea offer—or to decide whether Dodd's performance was deficient.[3]  We agree with the district court that Cook's inability to establish prejudice is dispositive of his ineffective-assistance claim.  *See Osley*, 751 F.3d at 1222.  We turn to the question of prejudice now.

### B.

Cook argues that he suffered prejudice because, had trial counsel kept him consistently informed about plea negotiations, a reasonable probability existed that he would have pled guilty and that he would have received a benefit from the government by doing so.  The government agrees that there is a reasonable probability of a less severe conviction and sentence had a plea deal been reached.  Thus, the question is whether there was a reasonable probability of a plea agreement that would have been accepted by Cook, the government, and the court.

Cook contends that the government would have agreed to a plea deal if Cook had agreed to the government's terms.  True enough, but Cook rejected the government's terms from the time they were first proposed to him.  And, explicitly or implicitly, he continued to reject these terms through the evidentiary hearing on his § 2255 motion.

---

[3] Nonetheless, we find the district court's explanation of why Dodd's performance was not deficient to be persuasive. (*See* D.E. 56 at 151-56).  Nor does the evidence show that Dodd failed to "consult with his client on important decisions and [] keep him informed of important developments in the course of the prosecution."  *Diaz*, 930 F.2d at 834.  The government's position did not change, so no "important development" existed to communicate.

The government insisted as part of any plea deal that Cook accept responsibility for the "lion's share" of criminal conduct alleged in the superseding indictment, including that he was, essentially, a manager of the check-cashing scheme in Birmingham.   The government also wanted Cook to recant his allegations that his confessions were forged.  The confessions were consistent with Cook's broader role in the scheme.  These two requirements did not change.

Cook knew the government's position on a potential plea deal because Dodd communicated these essential terms to Cook on numerous occasions.[4]   Although Cook was interested in pleading guilty, and although he testified at the hearing that he was willing to accept whatever plea deal was offered by the government in order to avoid trial, "[g]iven [Cook's] awareness of the [nascent] plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz*, 930 F.2d at 835.  The record is clear that Cook, both at the time of plea negotiations and at the § 2255 evidentiary hearing, refused to accept more than limited responsibility and maintained that the confessions were forged.  In short, Cook wanted a plea deal that the government simply was not willing to offer.

---

[4] While Cook may dispute this fact, the district court credited Dodd's testimony on this point, and Cook has offered no reason why we should not defer to the court's finding. *See Osley*, 751 F.3d at 1222; *Jeffries*, 748 F.3d at 1313.

Cook asserts that he would have pled guilty if Dodd had more thoroughly explained the legal ramifications of co-conspirator liability.[5]    In essence, he contends that he would have accepted the government's terms, had he understood that the government's plea position was based on the fact that the evidence was sufficient to prove him guilty at trial of the charges in the superseding indictment. This contention is belied by the fact that both attorney and client testified that Dodd told Cook he was probably going to lose if he went to trial.    Dodd specifically advised Cook that the jury was likely to believe the government agent on the validity of the confessions.    The confessions, which Cook continues to dispute, were consistent with the government's position on Cook's broader level of culpability.    Given the adamance and consistency with which Cook held his beliefs about his culpability in the conspiracy, Cook's current assertion that, with better advice he would have pled guilty to a greater role in the conspiracy, is wholly speculative and unsupported by the record and the district court's findings.

While not dispositive, Cook's insistence on his innocence of the conduct to which the government insisted he admit, both before and after trial, is a "relevant

---

[5]  The government suggests that we should not address this argument because it is outside the scope of the certificate of appealability. *See Murray v. United States*, 145 F.3d 1249, 1250-51 (11th Cir. 1998) (holding that, on appeal from the denial of a § 2255 motion, "appellate review is limited to the issues specified in the COA."). While we agree that Cook cannot proceed independently on a claim that counsel inadequately advised him of the charges he faced, we construe the certificate of appealability as including these issues as they relate to "counsel's alleged failure to adequately advise [Cook] of the Government's position on a plea in his case," given that similar points were raised below and discussed by the district court.

13

consideration" that "makes it more difficult to accept his claim" that he would have agreed to any plea deal the government would have offered him. *See Osley*, 751 F.3d at 1224-25. So too is the fact that plea negotiations never advanced to any level of specificity. *See id.* at 1225 ("The lack of definition in a plea offer makes it substantially harder to determine it likely that a plea acceptable to the defendant would have been entered without the prosecution canceling it or the trial court refusing to accept it." (brackets and emphasis omitted) (quoting *Merzbacher v. Shearin*, 706 F.3d 356, 370 (4th Cir. 2013))).

Assuming that "there may be cases in which a petitioner can show *Strickland* prejudice despite the incipience of the plea offer he did not accept due to his counsel's lack of communication or inadequate advice," *Merzbacher*, 706 F.3d at 369-70, this is not such a case. Given the parties' entrenched and widely divergent positions on a potential plea deal, Cook has not shown a reasonable probability that a plea deal could have been reached and then accepted by the court. *See Osley*, 751 F.3d at 1222.

Because Cook has failed to show that he was prejudiced by counsel's alleged ineffectiveness in advising him about the government's position in plea negotiations, we **AFFIRM** the denial of his § 2255 motion.