**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-7391

JOHN WALTERS,

       Petitioner – Appellant,

v.

MICHAEL MARTIN, Warden, Huttonsville Correctional Center,

       Respondent – Appellee,

and

JOHN T. MURPHY,

       Respondent.

NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS,

       Amicus Supporting Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., Senior District Judge. (5:17-cv-00096-FPS)

Argued: September 23, 2021                     Decided: November 18, 2021

Before WILKINSON, NIEMEYER and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

———————————

**ARGUED:** Madison Mischik, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Athens, Georgia, for Appellant. Michael Ray Williams, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee. **ON BRIEF:** Thomas V. Burch, Anna W. Howard, Sloane S. Kyrazis, Third-Year Law Student, Emily C. Snow, Third-Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Athens, Georgia, for Appellant. Patrick Morrisey, Attorney General, Lindsay S. See, Solicitor General, Thomas T. Lampman, Assistant Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee. Elizabeth A. Franklin-Best, Vice-Chair Amicus Committee, Columbia, South Carolina, David B. Smith, Vice-Chair Amicus Committee, NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, Alexandria, Virginia; Ruthanne M. Deutsch, Hyland Hunt, DEUTSCH HUNT PLLC, Washington, D.C., for Amicus Curiae.

———————————

AGEE, Circuit Judge:

John Walters appeals from the district court's denial of his 28 U.S.C. § 2254 petition. We granted a Certificate of Appealability ("COA") on one issue: counsel's failure to timely relay a favorable plea offer to Walters. *See* 28 U.S.C. § 2253. For the following reasons, we affirm the district court's judgment.

I.

We recite the underlying facts of this case as recounted by the Supreme Court of Appeals of West Virginia ("SCAWV") in its opinion on Walters' state habeas appeal:

> In January of 2012, [Walters] used a crowbar and knife to gain entry into his ex-girlfriend's ("victim's") home [after having allegedly caught her cheating on him]. The victim called 911 and stated that she believed someone was in her home. While the victim was on the telephone with 911 services, [Walters] entered her bedroom and demanded money and other items. [Walters] then struck the victim with a hammer he had obtained while in the home, and he left the victim's home with her cell phone and approximately $700.

*Walters v. Plumley*, No. 15-1062, 2017 WL 969139, at *1 (W. Va. Mar. 13, 2017). Walters was subsequently arrested and charged via information in the Circuit Court of Berkeley County, West Virginia ("state court") with first-degree robbery, in violation of West Virginia Code section 61-2-12(a); malicious assault, in violation of West Virginia Code section 61-2-9(a); and burglary, in violation of West Virginia Code section 61-3-11(a). Public defender Thomas L. Stanley was assigned to represent him.

In March 2012, the State extended a plea offer to Walters ("March plea offer"), proposing that he plead guilty to the first-degree robbery and malicious assault charges. Under the terms of the March plea offer, he would receive a twenty-year sentence on the

3

robbery charge, with any sentence for the malicious assault charge to run concurrently. In exchange, the State agreed to dismiss the burglary charge and to not seek a recidivist enhancement based on Walters' criminal history. Stanley's office timely received the March plea offer, which was set to expire in April 2012, but failed to communicate it to Walters until July 2012.

In the meantime, in April 2012, Walters wrote a pro se letter to the court "[r]equesting a possible bond [r]eduction," so that he could "move on with [his] [l]ife." J.A. 176. Walters did not receive a bond modification. Rather, in May 2012, a Berkeley County grand jury indicted Walters for burglary, in violation of West Virginia Code section 61-3-11(a); attempted murder, in violation of West Virginia Code sections 61-2-1 and 61-11-8; malicious assault, in violation of West Virginia Code section 61-2-9(a); domestic battery, in violation of West Virginia Code section 61-2-28(a); first-degree robbery, in violation of West Virginia Code section 61-2-12(a); and assault in the commission of a felony, in violation of West Virginia Code section 61-2-10. In June 2012, Walters again wrote to the court pro se, this time explaining that he had a conflict with Stanley and requesting a new attorney. Stanley continued to represent Walters.

In July 2012, the State extended another plea offer ("July plea offer"), proposing that Walters plead guilty to all charges in the indictment, pay restitution, and receive a twenty-eight-year sentence on the first-degree robbery charge, with any other sentences to run concurrently. Stanley did communicate this offer to Walters. In response, Walters asked him to obtain a thirty-day extension of the July plea offer and withdraw from representing him based on his perception that Stanley was ineffective. Stanley secured the

extension, but did not withdraw. The July plea offer eventually lapsed without response from Walters.

During the meeting in which Stanley communicated the July plea offer to Walters, Stanley discovered the March plea offer in Walters' file and immediately informed him of it in the presence of another assistant public defender, Joseph Whiteoak. As Stanley explained during a subsequent status hearing before the state court in August 2012, he inquired whether Walters would accept the March plea offer if Stanley could persuade the State to reinstate it. According to Stanley, Walters effectively declined to pursue that option because, at that point, he "d[idn't] want to do more than 10 years." J.A. 52.

In August 2012, Walters wrote a pro se letter to the prosecutor, essentially admitting guilt and requesting that he "please consider other options in [Walters'] punishment" and "some other avenue in this case." J.A. 316. Similarly, Walters wrote a pro se letter to the court "plead[ing] for mercy in [his] case" and explaining that "most people would have reacted the same way [he did]." J.A. 179. Finally, Walters filed a pro se motion seeking to compel Stanley to withdraw, describing communication difficulties and reiterating that Stanley failed to timely relay the March plea offer. This culminated in Walters' filing of an ethics complaint against Stanley, citing, *inter alia*, his failure to communicate the March plea offer. Stanley subsequently filed a motion to withdraw, which was granted, and Nicholas Colvin was appointed to represent Walters.

In September 2012, in response to the ethics complaint, Stanley explained the circumstances of his failure to timely relay the March plea offer. In addition to conveying how the March plea offer was discovered, as noted above, Stanley said that he could not

5

"provide an explanation of why a copy of the plea offer was not sent to Mr. Walters." J.A. 326. Upon finding the offer, Stanley indicated that he asked Walters to authorize him to "inform the prosecutor that he would accept the March 9 plea if offered," but that "[a]fter several evasive answers, Mr. Walters rejected the March 9 plea offer." J.A. 327. Moreover, Stanley explained that Walters refused to respond to the July plea offer, indicating instead that he wanted to discuss it with his pastor. Finally, Stanley relayed that during a meeting with investigators of the Public Defender's Office, Walters expressed a willingness on that occasion to only "plead[] guilty to a misdemeanor, serve a year in jail, and make restitution."[1] J.A. 331.

After negotiating the terms of a plea with Colvin's assistance in November 2012, Walters pleaded guilty shortly before trial in January 2013. Under the terms of this final plea agreement, Walters pleaded guilty to burglary, malicious assault, and first-degree robbery. In return, the State agreed to dismiss the remaining charges of attempted murder, domestic battery, and assault in the commission of a felony, and to not pursue a recidivist enhancement. The parties also agreed that the state court would retain complete discretion for sentencing.

In preparation for sentencing, a presentence report was prepared, which revealed Walters' lengthy criminal history, including two 1991 convictions for aggravated robbery and a 1992 conviction for grand larceny. Additionally, it indicated that his parole had been previously revoked.

---

[1] Finding no violations of the Rules of Professional Conduct, West Virginia's Lawyer Disciplinary Board closed Walters' complaint against Stanley.

At sentencing, the State recommended a sentence of one to fifteen years for the burglary charge, two to ten years for the malicious assault charge, and forty years for the robbery charge. Walters requested a sentence no greater than the twenty-year term provided in the March plea offer. The court adopted the State's recommendation, sentencing Walters to forty-three to sixty-five years' incarceration, citing Walters' criminal history, the seriousness of the instant offense, the danger he posed to the community, and his continuation of a violent life of crime, none of which provided a basis for leniency.

Walters appealed, arguing that his sentence was excessive and that he received ineffective assistance of counsel when Stanley failed to promptly communicate the March plea offer. The SCAWV affirmed without hearing oral argument in a memorandum opinion, as it found "no substantial question of law and no prejudicial error." *State v. Walters*, No. 13-0396, 2014 WL 211950, at *1 (W. Va. Jan. 17, 2014). In doing so, it noted that Walters' "claim of ineffective assistance of counsel would more appropriately be addressed pursuant to a petition for writ of habeas corpus." *Id.* at *3.

Walters then filed a state habeas petition pursuant to West Virginia Code section 53-4A-1, contending that Stanley was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to timely disclose the March plea offer. The State moved to dismiss. The state court conducted an evidentiary hearing, at which Stanley, Walters, and Whiteoak testified.

Stanley testified about the mail intake procedure at the Public Defender's Office. He advised that his secretary was to automatically notify clients of plea offers, and that she would then place the offer letter in his mailbox for review. Stanley stated that he did not

know why this procedure was not followed with respect to the March plea offer because it was never sent to Walters, and Stanley did not receive it in his mailbox.

When he did relay the March plea offer to Walters in July, Stanley described Walters as "upset." J.A. 245. Stanley testified that he attempted to remedy the situation:

> A. And I offered to contact [the prosecutor] immediately. I was ready to pick up the phone and call [the prosecutor] and do whatever it took to get the March plea offer reinstated. But before I called, I said it's going to be a waste of time to call if you will not accept the plea offer. There's no use getting an offer back on the table if you're not going to take it. And it was about that point he said – I recall him saying something about he needed to talk to his pastor or minister and he got up and left –
>
> Q. Okay.
>
> A. – without giving me an answer as to whether or not he would accept the offer if I can get it back.
>
> Q. All right. So it's your recollection that he didn't firmly accept or reject the offer?
>
> A. No. He would not give me an answer.
>
> Q. Okay.
>
> A. Which was a hallmark of our relationship.
>
> . . . .
>
> I never called to get the March plea offer back on the table because he wouldn't give me an answer. He neither accepted nor rejected. So I didn't see much point in calling [the prosecutor] and begging to put a plea offer back on the table that he was not going to take.

J.A. 246–48. Although Stanley did not specifically recall Walters flatly rejecting the offer to pursue reinstatement of the March plea offer, he testified that "[c]learly by his conduct, he rejected the offer." J.A. 261. Stanley elaborated, "If you ask someone do you want this

8

offer and they don't answer, [you] at some point consider that silence to be a rejection." *Id.* Stanley also explained that, at that time, Walters "indicated . . . that he didn't think the punishment should exceed maybe three years tops in his mind." J.A. 255.

Walters testified that he was willing to accept a plea, but had no interest in working with Stanley. Walters testified that, with Colvin's assistance, he ultimately accepted a plea agreement in January 2013 that resulted in a much higher sentence than he would have received with the March plea offer, and that he would have accepted the March plea offer had it been offered at that time. Walters also stated that Stanley neither discussed the March plea offer in-depth with him nor offered to call the prosecutor about reinstating that offer, but rather encouraged him to sign the July plea offer.

Whiteoak then testified that Walters did not expressly reject the March plea offer, but "would never get around to the point of saying he would accept the offer," as "[h]e insisted on less time which basically to [Stanley and Whiteoak] was a rejection of that offer." J.A. 285. Whiteoak also recalled Walters mentioning that the case was worth about three years' incarceration.

The state court denied Walters' habeas petition for lack of prejudice. Although the court found that Stanley's failure to timely relay the March plea offer fell below an objective standard of reasonableness under *Strickland*'s first factor, it concluded that Walters could not demonstrate prejudice under the second factor. Analyzing prejudice under *Missouri v. Frye*, 566 U.S. 134 (2012)—as is appropriate for *Strickland* claims based on counsel's failure to timely relay a favorable plea offer—the court reasoned that Walters had to demonstrate a reasonable probability that (1) he would have accepted the March

9

plea offer had Stanley timely presented it to him, and (2) the trial court would have accepted the terms of that plea offer. The court concluded that Walters could demonstrate neither and therefore failed to establish prejudice.

Specifically, on the first *Frye* prong, the court explained that the record did not support Walters' assertion that he would have accepted the March plea offer considering he neither agreed to Stanley's proposal to seek reopening of that offer nor accepted the subsequent July plea offer. Moreover, it cited Walters' letter to the prosecutor (wherein he requested an alternative to incarceration), which was incompatible with accepting the substantial sentence provided in the March plea offer (i.e., twenty years). The court found "compelling [Walters'] testimony that it took a while for the reality of his situation to sink in and for him to accept the seriousness of his circumstances." J.A. 363. On the second *Frye* prong, it concluded that Walters failed to demonstrate a reasonable probability that the state court would have accepted the terms of the March plea offer given his serious and lengthy criminal history. Absent succeeding on both *Frye* prongs, the court explained that Walters could not demonstrate prejudice under *Strickland* to support his claim.

On appeal, the SCAWV affirmed without hearing oral argument in a memorandum opinion, as it found "no substantial question of law and no prejudicial error." *Walters*, 2017 WL 969139, at *1. Focusing on the first *Frye* prong, the SCAWV found no error in the state court's conclusion that Walters appeared unwilling to accept any substantial term of incarceration at the time of the March plea offer. The court noted that in April 2012, Walters "sent a pro se letter to the [state] court asking to be released from jail so that he could 'move on with [his] life.'" *Id.* at *5 (second alteration in original). Moreover, it

10

explained that Walters "continued to seek a limited sentence by writing pro se letters to the [state] court asking for mercy in August of 2012 and to the prosecuting attorney's office in [August] of 2012 asking for alternative sentencing to avoid prison entirely." *Id.* The court further indicated that while Walters cited his willingness to accept a plea proposal he sent to the State in November 2012, "his willingness to accept such a sentence came only after six months of a pending indictment and an impending trial date of January of 2013 and after his attempts to seek a less-severe sentence failed." *Id.* Finally, the court noted that Stanley "indicated that he offered to ask the State to re-open the [March plea offer] in the summer of 2012, and [Walters] refused." *Id.* at *6. The SCAWV thus upheld the state court's determination that Walters could not establish prejudice.[2] However, Justice Ketchum filed a dissenting opinion, explaining that he would have scheduled the case for oral argument:

> Without question, [Walters'] trial counsel failed to communicate the March 9, 2012, plea offer to him before it expired. That plea offer was considerably more favorable to [Walters] than the offers he later sent to the State and the offer that he ultimately accepted. Moreover, [Walters] testified that he was willing to accept the March 9, 2012, plea offer when he learned of it in July of 2012. Understandably, [Walters] did not wish to keep his trial counsel, who barely communicated with him between January and July of 2012 and who failed to properly communicate the March 9, 2012, plea offer. Under the facts of this case, the inescapable conclusion is that [Walters'] trial counsel failed him. I firmly believe that the trial counsel's failure rendered him constitutionally ineffective. [Walters] probably would have been better off acting pro se because then, at least, he would have received the plea offer on time. I would set this case for oral argument.

---

[2] Resolving Walters' appeal on the first *Frye* prong, the SCAWV declined to address the second prong as to the reasonable probability that the state court would have accepted the March plea offer.

*Id.* (Ketchum, J., dissenting).

Walters subsequently filed a federal habeas petition pursuant to 28 U.S.C. § 2254. The State moved for summary judgment. After briefing, the magistrate judge issued a report and recommendation advising that the district court grant the State's motion. Focusing on the first *Frye* prong, the magistrate judge deemed "wholly appropriate" the state court's finding that Walters could not demonstrate a reasonable probability that he would have accepted the March plea offer had Stanley timely relayed it to him. As such, the magistrate judge recommended finding that the state court reasonably concluded that Walters failed to establish prejudice.

Walters filed objections to the magistrate judge's report and recommendation. The district court overruled them, concluding that the state court's finding that Walters failed to show the requisite prejudice based on the first *Frye* prong was reasonable. *Walters v. Martin*, No. 5:17CV96, 2019 WL 4316453, at *3–4 (N.D.W. Va. Sept. 12, 2019). Specifically, it agreed with the state court that Walters' actions did not indicate he would have accepted the March plea offer, citing that he "effectively declined his counsel's offer to seek a reopening of the March 9, 2012 plea offer" and mentioning his letters to the state court and prosecutor, wherein he sought leniency or alternative sentencing to avoid prison.[3] *Id.* at *3.

Walters timely appealed, and we granted a COA on one issue: "Whether, pursuant to *Missouri v. Frye*, 566 U.S. 134 (2012), Walters established that he was prejudiced by

---

[3] Neither the magistrate judge nor the district court addressed the second *Frye* prong.

counsel's failure to timely relay a favorable plea offer or to seek reopening of the plea offer." Certificate of Appealability, ECF No. 29. We therefore have jurisdiction under 28 U.S.C. §§ 1291 and 2253(c)(1)(A).

Walters moved to expand the COA to include "[w]hether, pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984) and *United States v. Cronic*, 466 U.S. 648 (1984), prejudice should be presumed because counsel's pervasive failure to communicate with Mr. Walters—both before and after the favorable plea offer—was a constructive denial of counsel." Appellant's Mot. to Expand the Certificate of Appealability, ECF No. 18. A panel of this Court denied the motion, cabining our consideration to the single issue in the COA.

## II.

On appeal, Walters asserts that he satisfies the two *Frye* prongs to establish prejudice under *Strickland*. We disagree. The state court appropriately concluded that Walters failed to show a reasonable probability that he would have accepted the March plea offer had Stanley timely communicated it to him. Therefore, Walters cannot demonstrate prejudice because his claim fails on *Frye*'s first prong. Accordingly, we affirm the district court's judgment.

## A.

This Court "review[s] a district court's denial of habeas relief de novo." *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may "entertain" an application for a writ

13

of habeas corpus from an inmate who claims that he is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, we do not "disturb[] state-court judgments . . . absent an error that lies beyond any possibility for fairminded disagreement." *Mays v. Hines*, 141 S. Ct. 1145, 1146 (2021) (per curiam) (citation and internal quotation marks omitted). Said another way, § 2254 "is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). Federal courts, therefore, cannot grant habeas relief under § 2254 unless the state court's decision: (1) "was contrary to" clearly established Supreme Court case law; (2) "involved an unreasonable application" of the same; or (3) "was based on an unreasonable determination of the facts in light of the" record before it. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

As relevant here, factual determinations are "unreasonable" when they are "sufficiently against the weight of the evidence." *Williams v. Stirling*, 914 F.3d 302, 312 (4th Cir. 2019) (quoting *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010)). However, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). Instead, a "state court's factual determinations are presumed correct, and the petitioner must rebut this presumption by clear and convincing evidence." *Bennett v. Stirling*, 842 F.3d 319, 322 (4th Cir. 2016); *accord* § 2254(e)(1). On this point, "[w]e must be 'especially' deferential to

14

the state court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.'" *Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) (internal citations omitted).

As noted above, "claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Frye*, 566 U.S. at 140. To establish ineffective assistance of counsel, a petitioner must prove: (1) his counsel was deficient in his representation; and (2) he was prejudiced as a result. *Strickland*, 466 U.S at 687. For the first factor, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To show prejudice in this context, petitioners must demonstrate a reasonable probability that (1) "they would have accepted the earlier plea offer had they been afforded effective assistance of counsel," and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."[4] *Frye*, 566 U.S. at 147.

## B.

We perceive no error, much less an unreasonable one, in the state court's decision. Rather, as the state court determined, we too conclude that Walters cannot establish prejudice[5] because his claim fails on *Frye*'s first prong. That is to say, the state court

---

[4] West Virginia courts have discretion to refuse a plea bargain. *State v. Waldron*, 624 S.E.2d 887, 892 (W. Va. 2005).

[5] *Strickland*'s other factor is not at issue, as the parties acknowledge that Stanley's failure to timely relay the March plea offer fell below an objective standard of reasonableness.

appropriately determined that Walters failed to show a reasonable probability he would have accepted the March plea offer had Stanley timely communicated it to him. In fact, reviewing the "contemporaneous evidence to substantiate [Walters'] expressed preferences" at the time of the March plea offer reflects he would not have accepted such an offer.[6] *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (directing courts to look to contemporaneous evidence because they "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies").

The record provides ample support for the state court's factual finding that Walters was unwilling to accept a substantial term of incarceration during the relevant timeframe. In April 2012, Walters wrote a pro se letter to the state court "[r]equesting a possible bond reduction," so that he could "move on with [his] life." J.A. 176. In August 2012, he again wrote to the state court "to plead for mercy in [his] case," stating that he thought "most people would have reacted the same way" he did after having allegedly caught the victim cheating on him. J.A. 179. And in that same month, Walters asked the prosecutor to "please consider other options in [his] punishment" and "some other [a]venue in this case." J.A.

_____

[6] We briefly note that Walters requests that we assess his claim in light of the context provided by Stanley's cumulative performance, citing various examples of perceived ineffectiveness apart from failing to timely communicate the March plea offer. We construe this as an impermissible request to expand the scope of the COA's singular issue, and decline to do so. A panel of this Court previously denied Walters' motion to expand the COA to consider the totality of Stanley's performance under *Cronic*, and we will not consider a repackaged argument to that effect now. *See Tyler v. Hooks*, 945 F.3d 159, 165 n.3 (4th Cir. 2019) (declining to address arguments "not within the scope of the issues granted by the COA" (citing 28 U.S.C. § 2253(c)(3); 4th Cir. R. 22(a))), *cert. denied*, 140 S. Ct. 2785 (2020).

16

316. These letters signal that around the relevant timeframe, Walters would have been unwilling to accept any term of incarceration even close to the twenty-year sentence provided in the March plea offer.

The testimony of Stanley and Whiteoak during the evidentiary hearing, as well as Walters' reaction to the March and July plea offers, bolster this conclusion. As Stanley testified, "[Walters] didn't think the punishment should exceed maybe three years tops in his mind." J.A. 255. Whiteoak corroborated this, noting that Walters believed that "whatever happened was worth about three years at most." J.A. 286. And when Stanley conveyed the March plea offer to Walters, Walters did not request that Stanley attempt to reopen it. *See* J.A. 247 (Stanley testifying that Walters "would not give [him] an answer" as to whether he would "firmly accept or reject" the March plea offer); J.A. 285 (Whiteoak testifying that Walters "never said he wanted [Stanley to attempt to reopen the March plea offer]. I don't know if he flat out said no, but he never would get around to the point of saying he would accept that offer. He insisted on less time which basically to us was a rejection of that offer"). Finally, Walters exhibited similar disinterest in accepting a plea deal when he requested that Stanley secure a thirty-day extension for the July plea offer, but then declined to act on that offer after the extension was secured.

These examples reflect an individual unwilling to accept responsibility for his actions, which is in keeping with Walters' statement that it took time for "[t]he reality [to] sink[] in of the severity of this situation." J.A. 283. In short, "[t]he record is clear that [Walters] . . . refused to accept more than limited responsibility [at the time of the March plea offer] . . . . [He] wanted a plea deal that the government simply was not willing to

17

offer." *Cook v. United States*, 613 F. App'x 860, 865 (11th Cir. 2015) (per curiam); *see also Feliciano-Rodríguez v. United States*, 986 F.3d 30, 38 (1st Cir. 2021) (concluding that the state court did not err when finding that the petitioner would have declined the plea offer had he known of it because "he wanted a lower plea offer from the government and he did not get one").

Walters fails to present clear and convincing evidence to the contrary. *Bennett*, 842 F.3d at 322. As for his own post hoc testimony, he asserted that he would have accepted the March plea offer "if [he] had [had] effective counsel [so] that [he] would have been able to review the matter." J.A. 278. But his "self serving assertion that he would have accepted the plea is . . . the type of testimony . . . subject to heavy skepticism." *Merzbacher v. Shearin*, 706 F.3d 356, 367 (4th Cir. 2013) (citation and internal quotation marks omitted). And his remaining arguments do not alleviate this skepticism.

For instance, Walters points to the counteroffers he sent to the State in November 2012, asserting that "[r]epeated counteroffers, the terms of which contained additional charges and longer prison sentences, are not the actions of a man unwilling to accept a plea." Opening Br. 26–27. But Walters' actions in November 2012 do not speak to his state of mind at the time of the March plea offer. As the state court persuasively recognized, "[w]hile [Walters] did send a plea offer to the State in November showing his willingness to then engage in plea negotiations, that was three months following the expiration of the State's last plea offer, which [he] rejected." J.A. 363; *see also Walters*, 2017 WL 969139, at *5 (the SCAWV explaining that Walters "focuses on his offer in late November of 2012 . . . . However, his willingness to accept such a sentence came only after six months of a

18

pending indictment and an impending trial date of January of 2013 and after his attempts to seek a less-severe sentence failed"). Accordingly, Walters' interest in negotiating in November 2012 is tangential, at best, to establishing his state of mind during the time in question. *See Smith v. Cook*, 956 F.3d 377, 395 (6th Cir. 2020) ("We do not doubt that [the petitioner] wishes, in hindsight, he had taken the deal—his sentence is three times what it might have been. But absent evidence that [the petitioner] would have taken the deal *at the time*, he has not shown prejudice."), *cert. denied*, 141 S. Ct. 1111 (2021).

Walters next attempts to undermine the state court's factual determination by highlighting that the plea he ultimately took resulted in a longer sentence (forty-three to sixty-five years) than the one included in the March plea offer (twenty years). He contends that this difference shows that he would have been willing to accept the March plea offer. But, as we highlighted in *Merzbacher*—where the petitioner "argue[d] that he ha[d] demonstrated a reasonable probability that he would have accepted the plea by simply offering his own post hoc testimony that he would have done so and pointing out the disparity between the ten-year plea and the life sentences he received"—"to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible." 706 F.3d at 366–67. And here, the state court reasonably found Walters' testimony not credible, concluding that he could not establish a reasonable probability that he would have accepted the March plea offer had he timely known of it. So, just as in *Merzbacher*, which involved a much more severe sentencing disparity than the one at issue here, we defer to the state court's credibility finding because

we perceive no "stark and clear" error with it. *Id.* at 365 (quoting *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008)).

At bottom, Walters cannot meet the high bar to overcome our deferential standard of review. The state court's finding on the first *Frye* prong that Walters failed to demonstrate a reasonable probability that he would have accepted the March plea offer had Stanley timely conveyed it to him was not "an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). *See id.* at 367–68 ("The state court and the federal court reviewed the same somewhat conflicting evidence as to whether [Walters] would have accepted the plea. AEDPA requires deference to the state court's assessment of that evidence, even if the assessment is incorrect, unless it is unreasonable." (citation omitted)); *Wood*, 558 U.S. at 301 ("[E]ven if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." (citation and internal quotation marks omitted)). Satisfied that Walters cannot demonstrate prejudice under *Strickland* based on his inability to meet the first *Frye* prong, we decline to address the second. Accordingly, we affirm.

## III.

For the reasons discussed above, the judgment of the district court is

*AFFIRMED.*