**NOT FOR PUBLICATION**

## In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13306

Non-Argument Calendar

_____

RICHARD NORRIS,

*Petitioner-Appellant,*

*versus*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket Nos. 1:21-cv-00268-JB-N,
1:19-cr-00281-JB-N

_____

Before JORDAN, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

Richard Norris, a federal prisoner serving a 181-month sentence after pleading guilty to possession of a controlled substance with the intent to distribute and possession of a firearm in furtherance of a drug trafficking offense, appeals the denial of his amended 28 U.S.C. § 2255 motion to vacate. The District Court denied Norris relief, but granted him a certificate of appealability ("COA") on the following issue:

> Whether Norris's trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to pursue a motion to suppress the evidence seized from Norris's truck on September 16, 2019, on the basis that the officers did not have reasonable suspicion to prolong the traffic stop to allow for the arrival of a drug-sniffing dog.

Because the officer likely had a reasonable suspicion to prolong Norris's traffic stop and Norris cannot demonstrate that no competent counsel would have failed to file a motion to suppress on this basis, we affirm.

## I.    Factual Background and Procedural History

In November 2019, a federal grand jury indicted Richard Norris on one count of knowing and intentional possession with intent to distribute of a Schedule II controlled substance and one count of knowing possession of a firearm in furtherance of a drug trafficking offense. Norris pled guilty to both counts. In the plea agreement, Norris signed a statement confirming that he consulted with his

counsel and fully understood his rights respecting the indictment. Norris also affirmed that the factual resume incorporated in the plea agreement was "true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt."

The factual resume describes the events leading up to Norris's arrest and subsequent indictment. On September 16, 2019, Norris was pulled over in Baldwin County, Alabama, by Officer Childress of the Gulf Shores Police Department. When Childress approached Norris, he recognized Norris from an incident earlier that year when Norris was evicted from his residence and the property owner found narcotics paraphernalia inside the dwelling. In addition, Childress observed that Norris was acting suspiciously. Childress informed Norris that a canine unit was on its way to check Norris's vehicle for narcotics. Childress explained that Norris and his passenger were free to leave, but, if Norris chose to leave, the police would detain his vehicle. Norris waited with his vehicle and, when the canine unit arrived, the dog alerted to the presence of narcotics. Childress searched the vehicle and recovered a methamphetamine pipe, a black digital scale, 58 grams of methamphetamine, and a pistol. In the factual resume, Norris admits that he possessed the methamphetamine with the intent to distribute it and that he possessed the firearm in furtherance of that felony drug offense.

On January 21, 2020, the District Court held a plea hearing in which Norris affirmed, among other things, that he reviewed the

indictment with his attorney and that he was fully satisfied with his attorney's representation. The District Court found that Norris was fully competent and capable of entering an informed plea and accepted his plea of guilty on both counts. At the sentencing hearing, Norris made no objection to the information in the presentence report. The District Court, after stating its intention to give Norris the "benefit of [his] bargain with the government" sentenced Norris on the low end of the guidelines.

Norris did not directly appeal. Instead, he filed a pro se motion to vacate under 28 U.S.C. § 2255 in which he argued, among other things, that his counsel, Assistant Federal Defender Latisha Colvin, provided ineffective assistance by failing to object to the search and seizure of his vehicle and that, "had [he] been made aware [that there was] a possibility the evidence could be suppressed . . . [he] would not have pled guilty." In opposition to Norris's motion, the Government argued that Norris's ineffective assistance of counsel claim was without merit because Norris "failed to establish deficient performance and prejudice as required by *Strickland*."

The magistrate judge determined that an evidentiary hearing was warranted on the following narrow issue: "Norris's claim that his trial counsel was ineffective for failing to advise him of a Fourth Amendment defense and failing to file a motion to suppress the evidence seized from his vehicle." The magistrate judge also appointed counsel for Norris. After hearing Colvin's and Norris's testimonies, the magistrate judge issued a Report and Recommendation in which she recommended that Norris's operative § 2255

motion should be denied and dismissed with prejudice and that Norris should be granted a COA on the following question: "Whether Norris's trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to pursue a motion to suppress the evidence seized from Norris's truck on September 16, 2019, on the basis that the officers did not have reasonable suspicion to prolong the traffic stop to allow for the arrival of a drug-sniffing dog." Norris timely filed this appeal.

## II.    Standard of Review

The scope of review of an unsuccessful § 2255 motion is limited to the issues enumerated in the COA. *Rhode v. United States*, 583 F.3d 1289, 1290–91 (11th Cir. 2009); *see also Murray v. United States*, 145 F.3d 1249, 1250 (11th Cir. 1998). Here, the issue enumerated in the COA is narrow. It asks whether Norris's trial counsel rendered ineffective assistance by failing to pursue a motion to suppress "on the basis that the officers did not have reasonable suspicion to prolong the traffic stop to allow for the arrival of a drug-sniffing dog."

When reviewing the district court's denial of a § 2255 motion, we review findings of fact for clear error and questions of law de novo. *Rhode*, 583 F.3d at 1290. Ineffective assistance of counsel claims are mixed questions of law and fact which we review de novo. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014); *Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008).

## III.    Ineffective Assistance of Counsel

The Supreme Court articulated the standard for assessing an ineffective assistance of counsel claim in *Strickland v. Washington.*

466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In that case, the Court emphasized that, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S. Ct. at 2064. The burden is on the defendant to show first, "that counsel's performance was deficient" and second, "that the deficient performance prejudiced the defense." *Id.* at 687, 104 S. Ct. at 2064. While *Strickland*'s two-part standard arose out of a claim of ineffective assistance of counsel in a capital sentencing proceeding, the standard also applies to Sixth Amendment claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 369–70 (1985).

In the first prong of the *Strickland* inquiry, we ask whether counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064. Importantly, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* The court's task is not to say what is possible, prudent, or appropriate, "but only what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 107 S. Ct. 3114, 3126 (1987)). Thus, in this case, the relevant question with regard to the deficiency prong is whether "no competent attorney would think a motion to suppress would have failed." *Premo v. Moore*, 562 U.S. 115, 124, 131 S. Ct. 733 (2011).

The second *Strickland* prong asks whether the defendant was prejudiced by their counsel's deficient assistance. To prove an ineffective assistance claim arising out of a guilty plea, the defendant must convince the court not only that "a decision to reject the plea bargain would have been rational under the circumstances," *Padilla v. Kentucky*, 559 U.S. 356, 372, 130 S. Ct. 1473, 1485 (2010), but also that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 562 U.S. at 122, 131 S. Ct. at 739 (citation omitted).

Thus, both *Strickland* prongs hinge on the likelihood that Norris's hypothetical Fourth Amendment claim would have been successful. *See Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015) ("In cases like this one, where a petitioner faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice prongs of *Strickland* turn on the viability of the motion to suppress."). Thus, to prevail on his motion, Norris must show first, that his argument for suppression was so strong as to render his counsel's failure to file the motion unreasonable, and second, that there is a reasonable probability that a motion to suppress would have been granted and the outcome of the case would have been different.

## A. Suppression

With that standard in mind, we turn to the merits of Norris's suppression argument. As we stated above, the COA limits this analysis to the argument that the search of Norris's car violated the Fourth Amendment because officers did not have reasonable

suspicion to prolong the traffic stop to allow for the arrival of a drug-sniffing dog.

A traffic stop based on probable cause is a lawful seizure under the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 837 (2005). But "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350, 135 S. Ct. 1609, 1612 (2015). Thus, a traffic stop based on probable cause becomes unlawful if (1) "it is prolonged beyond the time reasonably required to complete th[e] mission" of the stop, *Caballes*, 543 U.S. at 407, 125 S. Ct. at 837, and (2) the officer does not have reasonable suspicion to justify prolonging the stop. *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003) ("A traffic stop may be prolonged where an officer is able to articulate a reasonable suspicion of other illegal activity beyond the traffic offense.").

Reasonable suspicion is a less stringent standard than probable cause; while probable cause requires a preponderance of the evidence, reasonable suspicion requires at least "a minimal level of objective justification" for making the stop. *United States v. Braddy*, 11 F.4th 1298, 1310 (11th Cir. 2021). Reasonable suspicion requires that the officer have a "particularized and objective basis" for their suspicion rather than a "hunch." *Id.* We look at the totality of the circumstances to determine whether the officer had a reasonable suspicion to prolong a stop. *Id.* Factors that might combine to give rise to a reasonable suspicion include a nervous demeanor and

evasive behavior. *See United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999) (listing "reluctance to stop" among the factors that may contribute to the formation of an objectively reasonable suspicion of illegal activity); *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."). *But see U.S. v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003) (noting that nervousness does not always give rise to reasonable suspicion because "a traffic stop is an 'unsettling show of authority' that may 'create substantial anxiety'") (citing *Delaware v. Prouse*, 440 U.S. 648, 657, 99 S. Ct. 1391, 1398 (1979)).

Here, Norris argues that Childress did not have a reasonable suspicion to justify prolonging the stop, but rather, delayed for six to seven minutes "for the sole purpose of . . . wanting to pursue investigation of a hunch about narcotics that was supported by no viable articulated circumstances." The record reveals, however, that Childress perceived Norris's behavior to be nervous and evasive which roused Childress's suspicions. As Childress followed Norris, he believed Norris was "trying to avoid" him by abruptly changing lanes and stopping at a gas station for a few minutes before returning to the road. Childress's suspicion continued because when Childress activated his emergency lights, Norris did not immediately pull over, despite there being opportunities to safely stop. Furthermore, Childress reported that when he approached the vehicle, Norris had already retrieved his driver's license which caused Childress to question whether Norris was trying to expedite the traffic stop. Finally, Childress reported that he recognized

Norris from a prior uncharged narcotics-related incident. According to Childress's report, these factors caused Childress to request a canine unit to check the vehicle for narcotics.

Norris argues that Colvin was ineffective because the factors supporting Childress's reasonable suspicion were "completely assailable" and, "if the issue of suppression had been fully litigated, it is quite plausible" the District Court would have found the stop to violate *Rodriguez*. Plausibility, however, is not the standard. The first *Strickland* question is whether the Fourth Amendment argument was so strong that no reasonable attorney would forgo making a motion to suppress. It is clear from the record that at the time Colvin presented Norris with the Government's plea deal there was at least some evidence to suggest that Childress may have had reasonable suspicion to justify the extension of the traffic stop. Since there was some doubt about the likelihood that Norris's suppression argument would succeed, it was not unreasonable for Colvin to choose a strategy of cooperation with the Government instead of a motion to suppress.

Norris also asserts that Colvin's performance was deficient because her decision to pursue the plea deal in lieu of a motion to suppress was based on the "unreasonable assumption" that "you can't fight the government and cooperate at the same time." We disagree with Norris's characterization of Colvin's assumption as "unreasonable."

In general, "judicial scrutiny of an attorney's performance is appropriately highly deferential because the craft of trying cases is

far from an exact science; in fact, it is replete with uncertainties and obligatory judgment calls." *Bolender v. Singletary*, 16 F.3d 1547, 1557 (11th Cir. 1994). In cases involving plea negotiations the principle of deference is even stronger because "[t]he art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions further removed from immediate judicial supervision." *Premo v. Moore*, 562 U.S. 115, 125, 131 S. Ct. 733, 741 (2011). Furthermore, Colvin's rationale was reasonable given the circumstances. Colvin testified that the prosecutor communicated to her that if the Government must prepare for a suppression hearing, then it is also ready for trial. The obvious implication of that statement is that if the defense were to pursue a motion to suppress, it would impact the availability of the plea deal. Giving great deference to Colvin's decision, we conclude that it was not an unreasonable strategy for Colvin to pursue the plea deal in lieu of a motion to suppress.

Since the merits of a motion to suppress were uncertain and Colvin's decision to forego the motion was the logical product of her plea negotiations, we conclude that Colvin's performance was not deficient. Because Norris has failed to meet the deficiency prong of *Strickland*, we need not reach the question of prejudice.

### IV.  Conclusion

Given the foregoing analysis, we affirm the District Court's denial of Norris's § 2255 motion.

**AFFIRMED.**